Alex R. Straus, SBN 321366
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormack Street
Los Angeles, CA 91436
T: 917-471-1894
F: 310-496-3176

*Proposed Class Counsel*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AMADO MUNOZ, CAROLYN HEIER, BEN HU, GARY TETRAULT, MATTHEW ROBINSON, MICHAEL SCHWARTZ, FRANK COSTOBILE, RACHEL FAIRCHILD, JAMES TILLERY, and LINGYAN YIN individually and on behalf of all others similarly situated,

          Plaintiffs,

    v.

AMERICAN HONDA MOTOR CO., INC., a California Corporation, and HONDA NORTH AMERICA, INC., a Delaware Corporation,

          Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**(Demand for Jury Trial)**

Plaintiffs Amado Munoz, Carolyn Heier, Ben Hu, Gary Tetrault, Matthew Robinson, Michael Schwartz, Frank Costobile, Rachel Fairchild, James Tillery, and

Lingyan Yin ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action for damages and equitable relief against Defendants American Honda Motor Co., Inc. ("AHM") and Honda North America, Inc. ("HNA") (collectively "Honda" or "Defendants").

## I. INTRODUCTION

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of 2016-2019 model year Honda Civics ("Class Vehicles")[1] designed, manufactured, distributed, warranted and sold/leased by Honda, and equipped with uniformly defective air conditioning systems ("AC System").[2]

2.      On information and belief, the AC System in all Class Vehicles is substantially the same, from a mechanical engineering and design standpoint, in that the AC Systems in all Class Vehicles are composed of and employ identical components to deliver cooled air to the passenger cabin.

3.      Unbeknownst to Plaintiffs and other consumers, however, Honda's Class Vehicles are equipped with AC Systems that are guaranteed to fail prematurely and well in advance of their expected useful life. Specifically, Class Vehicle AC Systems suffer from a serious defect in materials, workmanship and/or design that cause the AC Systems to (a) crack and leak refrigerant; (b) lose pressure within the AC System; and (c) fail to cool Vehicle passenger cabins ("the Defect").

4.      Model Year 2016 Class Vehicles represent Honda's first attempt to equip Civic vehicles with AC Systems that utilize R-1234yf refrigerant, which purportedly is more environmentally friendly than R-134a refrigerants, long used in modern automotive AC Systems.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

[2] Plaintiffs include individuals who previously brought similar claims against Honda, but which were deemed not yet ripe which were dismissed without prejudice and without leave to amend on July 20, 2020. *See Elkins*, *et al. v. American Honda Motor Co., Inc., et al*., Case No. 8:19-cv-00818-JLS-KES (Dkt. 60). *See* Section IV(F)(10) for further discussion of the *Elkins* matter.

5.    Unfortunately for unsuspecting Class members, however, the R-1234yf compatible AC System Honda designed for and equipped in Class Vehicles is prone to develop leaks throughout the system due to a defect in materials, workmanship and/or design that renders the System's components unable to withstand the pressures, forces and reactions that the System encounters and experiences when circulating R-1234yf to cool Vehicle cabins during normal, expected and foreseeable usage and conditions.

6.    Although the Defect may *first* manifest as leaks in the Vehicles' condensers or compressors, it also causes other vehicle components (such as evaporators and discharge and suction lines) to fail.

7.    The AC System Defect sometimes manifests at low mileages and within Honda's New Vehicle Express Warranty periods, however, most frequently Honda shirks its warranty obligations. Honda's authorized dealers frequently refuse to perform repairs for in-warranty Class Vehicles until and unless Class Members pay an exorbitant "diagnostic fee," after which dealerships inspect the vehicles and often claim that the AC System showed signs of impact from "road debris," which Honda claims voids warranty coverage, or assert that a leak could not be detected.

8.    When Honda refuses to provide warranty coverage, consumers are forced to pay between $150.00 and $2000.00 out of pocket to repair their AC Systems with the same defective parts.

9.    Regardless of whether Honda provides warranty coverage for one failed component and claims it has permanently repaired the AC System, however, that repair typically proves ineffective. Other AC System components invariably fail outside the warranty period, forcing Class Members into a never-ending and expensive game of whack-a-mole involving a vehicle for which they paid tens of thousands of dollars.

10.    The Defect is so pervasive that replacement AC System condensers, compressors, and evaporators are perpetually on *national backorder*. The lag time

for replacement parts is long—often many months—during which Plaintiffs and Class Members must either suffer without a functioning AC System or obtain aftermarket parts from a third party at their own expense, which, according to Honda's warranties, will preclude such customers from participating in a recall campaign should Honda ever decide to initiate one.

11.    Indeed, once it manifests, the Defect prohibits Plaintiffs and Class Members from using their AC Systems—a once-optional feature that now comes standard in almost every vehicle sold in the United States. It also forces Class members to pay for equally defective replacement parts that are susceptible to a repeat failure, thus impairing Class Vehicles' central function: providing safe, comfortable, and reliable transportation.

12.    The AC System Defect also imposes safety risks on Plaintiffs and Class Members by exposing vehicle occupants to unsafe temperatures and decreasing visibility due a failed AC System's inability to clear foggy vehicle windshields.

13.    On information and belief, and as evidenced by a July 2016 Technical Service Bulletin concerning the Defect, Honda learned of the AC System Defect long before it began selling or leasing Class Vehicles, through sources such as: pre-release evaluation and testing; repair data; replacement part sales data; early consumer complaints made directly to Honda, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI"), and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers; and other internal sources.

14.    Despite longstanding knowledge of the Defect, Honda failed to disclose and actively concealed the AC System Defect from Class Members and the public and continued to market and advertise the Class Vehicles as "a new benchmark in the compact class in terms of spaciousness, fuel efficiency, safety features, interior

quality and dynamic performance," and as delivering "premium comfort" through a "[d]ual-zone automatic climate control" system, which they do not.

15. Honda refused—and continues to refuse—to disclose the AC System Defect to prospective customers, and actively conceals and concealed the Defect from Plaintiffs and Class Members prior to and at the time of sale. Specifically, Honda chose to conceal from Class Members that the AC System suffers from a defect in materials, workmanship and/or design and eventually will require costly repairs, and that the Defect reduced the value of the Vehicles at the time of sale and/or will reduce the resale value of the Vehicles due to the defective nature of the AC System.

16. Moreover, because Honda has failed to provide an effective in-warranty fix for the Defect within a reasonable time and forced Class Members to wait unreasonable lengths of time for repairs and/or pay out-of-pocket to replace failed AC System components with equally defective replacement parts, its warranties fail of their essential purpose.

17. Because of Honda's alleged misconduct, Plaintiffs and Class Members have incurred, and will continue to incur, out-of-pocket, unreimbursed costs and expenses relating to the AC System Defect and purchased Class Vehicles that were worth less at the time of sale and/or will be worth less at the time of resale. Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, bring this action for monetary and equitable relief.

## II. PARTIES

**PLAINTIFFS**

18. Plaintiffs in this matter are owners and lessees of 2016-2019 Honda Civics who purchased their Class Vehicles and reside in various states, including California, Connecticut, Florida, Oregon, Pennsylvania, Virginia, and Washington.

**DEFENDANTS**

19.    Defendant American Honda Motor Co., Inc. ("AHM") is a corporation organized under the laws of the State of California and has its principal place of business in Torrance, California. AHM operates, maintains offices, and/or conducts business in all fifty states.

20.    Defendant Honda North America, Inc. ("HNA") is a Delaware corporation with its principal place of business in Torrance, California.

21.    Defendants (collectively referred to as "Honda") are the developers, designers, manufacturers, assemblers, testers, inspectors, marketers, advertisers, distributors, sellers, and/or warrantors of the Class Vehicles.

22.    The division of liability, jointly or severally or both, among Defendants AHM and HNA requires discovery of facts known only to Defendants.

### III. JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act because there is minimal diversity, the proposed Class and Subclasses each exceed one hundred members, and the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

24.    This Court can exercise personal jurisdiction over Defendants because both Defendants are incorporated in California and headquartered in Torrance, California. Defendants' actions summarized in this Complaint occurred in this District so as to subject them to *in personam* jurisdiction in this District.

25.    This Court can exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

26.    Venue is proper in this District under 28 U.S.C. § 1391(a)-(c). Defendants are registered to and do conduct substantial business in the State of California, within this District, and otherwise maintain requisite minimum contacts with the State of California. Additionally, Defendants distribute Class Vehicles in

this District and receive substantial compensation and profits from the sale and lease of Class Vehicles in this District.

## IV. FACTUAL ALLEGATIONS

### A. **Plaintiffs' Experiences**

**Plaintiff Amado Munoz**

27.     Plaintiff Amado Munoz ("Plaintiff Munoz") is a citizen of the State of California, and currently resides in Covina, California. In or around August 2017, Plaintiff Munoz purchased a new 2017 Honda Civic from Sierra Honda, an authorized Honda dealer in Monrovia, California, for personal, family, and/or household use.[3]

28.     Prior to purchasing his Class Vehicle, Plaintiff Munoz test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff.

29.     In November 2018, with approximately 42,000 miles on the odometer, the AC System in Plaintiff Munoz's Class Vehicle failed without warning.

30.     Plaintiff Munoz subsequently brought his Class Vehicle to Sierra Honda, where an authorized Honda technician performed a diagnostic examination and informed him his vehicle's compressor had failed and was leaking Freon. Plaintiff Munoz was told that a rock may have hit the compressor.

31.     While part of the $1700 charge to replace the compressor was covered by Plaintiff Munoz's extended warranty, Plaintiff Munoz paid $130.00 for the diagnostic and $483.50 for the compressor to be replaced and the system recharged.

32.     Two weeks after Plaintiff Munoz had his compressor repaired, the air conditioning in his Class Vehicle failed again. When Plaintiff Munoz brought his

---

[3] See also discussion of prior *Elkins* litigation in Section IV(F)(10) below.

Class Vehicle to Sierra Honda, he was told that the condenser had failed. Once again, Sierra Honda said road debris was the likely culprit. However, Sierra Honda refused to fix the condenser under warranty. The manager of Sierra Honda told Plaintiff Munoz, "If you want to take me to court, take me to court." Plaintiff Munoz refused to pay for a new condenser.

33.    Plaintiff Munoz contacted Defendant Honda on several occasions and spoke with an employee named David at extension 87158 but was told that they could not help him with the condenser if it was out-of-warranty.

34.    Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Munoz of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

35.    Plaintiff Munoz has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost he incurred to diagnose and repair the Defect, and the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Munoz, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Carolyn Heier**

36.    Plaintiff Carolyn Heier ("Plaintiff Heier") is a citizen of the State of Virginia, and currently resides in Reston, Virginia. In or around April 2016, Plaintiff Heier purchased a new 2016 Honda Civic from Robertson Honda, an authorized Honda dealer in Los Angeles, California, for personal, family, and/or household use.

37.    Prior to purchasing her Class Vehicle, Plaintiff Heier test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Heier relied on Honda's misrepresentations and omissions in deciding to purchase her vehicle.

38.     On or around April 1, 2018, with approximately 17,750 miles on the odometer, the AC system in Plaintiff Heier's Class Vehicle failed without warning.

39.     The AC system was repaired under original warranty.

40.     In 2019, the condenser in Plaintiff Heier's Class Vehicle failed a second time and was repaired under TSB.

41.     In 2020, the compressor in Plaintiff Heier's Class Vehicle failed and Plaintiff Heier paid $1,850.87 out of pocket to repair the compressor at Ourisman Honda of Tysons Corner, Virginia.

42.     Plaintiff Heier submitted a claim under TSB but was denied over the phone.  Defendant Honda refused to send her denial in writing.

43.     On February 3, 2021, Defendant Honda sent Plaintiff Heier letter claiming that it did not have enough information to evaluate her claim.

44.     Due to the Defect's pervasive nature and the fact that AC System repairs appear to restore functionality only temporarily, Plaintiff Heier is not confident that the repairs performed will permanently restore functionality to her AC System.

45.     Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Heier of the Defect's existence at any time either prior to or following her purchase, whether at the point of sale or otherwise.

46.     Plaintiff Heier has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations concerning the Defect, including but not limited to the out-of-pocket cost she incurred to diagnose the Defect, and the diminished value of her Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Heier, she would not have bought her Class Vehicle or would have paid less for it.

**Plaintiff Ben Hu**

47.     Plaintiff Ben Hu ("Plaintiff Hu") is a citizen of the State of California, and currently resides in Fremont, California. In or around May 2016, Plaintiff Hu

purchased a new 2016 Honda Civic from Livermore Honda, an authorized Honda dealer in Livermore, California, for personal, family, and/or household use.[4]

48.   Prior to purchasing his Class Vehicle, Plaintiff Hu test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff.

49.   In May 2019, with approximately 17,000 miles on the odometer, the AC System in Plaintiff Hu's Class Vehicle failed without warning.

50.   Plaintiff Hu subsequently brought his Class Vehicle to AutoNation Honda in Fremont, California, where an authorized Honda technician performed a diagnostic examination and informed him his Class vehicle had a "faulty" compressor and recommended a replacement.

51.   Plaintiff Hu paid $2,340.37 for the diagnostic and to replace the compressor and O rings, but does not, and cannot, know whether the repairs cured the Defect in his Class Vehicle.

52.   Plaintiff Hu contacted Defendant Honda on several occasions and spoke with an employee named Eric Brown at extension 87015 (case number 09723008) but was told that because Plaintiff Hu chose to pay the bill at the dealership before contacting Honda Corporate, they were not obligated to help with reimbursement.

53.   Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Hu of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

54.   Plaintiff Hu has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost he incurred to diagnose and repair the Defect, and

---

[4] See also discussion of prior *Elkins* litigation in Section IV(F)(10) below.

the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Hu, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Gary Tetrault**

55.    Plaintiff Gary Tetrault ("Plaintiff Tetrault") is a citizen of the State of Connecticut, and currently resides in Enfield, Connecticut. In or around August 2016, Plaintiff Tetrault purchased a new 2016 Honda Civic from Lea Honda, an authorized Honda dealer in Enfield, Connecticut, for personal, family, and/or household use.

56.    Prior to purchasing his Class Vehicle, Plaintiff Tetrault test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Tetrault relied on Honda's misrepresentations and omissions in deciding to purchase his vehicle.

57.    On or about June 24, 2020, with approximately 19,680 miles on the odometer, the AC system in Plaintiff Tetrault's Class Vehicle failed without warning.

58.    Plaintiff Tetrault brought his Class Vehicle to Lia Honda of Enfield, Connecticut where an authorized Honda technician performed a diagnostic examination and informed him that his Class Vehicle's condenser and compressor had failed.

59.    In July 2020 Plaintiff Tetrault had his Class Vehicle's condenser and compressor replaced at Lia Honda of Enfield, Connecticut. The condenser was repaired under TSB, but Plaintiff Tetrault paid $1,603.19 out of pocket to replace the compressor.

60.    Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Tetrault of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

61.    Plaintiff Tetrault has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost he incurred to diagnose and repair the Defect, and the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Tetrault, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Matthew Robinson**

62.    Plaintiff Matthew Robinson ("Plaintiff Robinson") is a citizen of the State of Florida, and currently resides in Windermere, FL. In or around May 2016, Plaintiff Robinson purchased a Certified Pre-Owned 2016 Honda Civic LX from Classic Honda, an authorized Honda dealer in Orlando, Florida, for personal, family, and/or household use.

63.    Prior to purchasing his Class Vehicle, Plaintiff Robinson viewed advertisements for the vehicle and the vehicle's window sticker and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Robinson relied on Honda's misrepresentations and omissions in deciding to purchase his vehicle.

64.    In May of 2020, with approximately 53,000 miles on the odometer, the AC System in Plaintiff Robinson's Class Vehicle started failing and making a leaking/hissing sound. A couple of weeks later. The AC System completely failed.

65.    Plaintiff Robinson subsequently brought his Class Vehicle to Headquarter Honda, located in Clermont, Florida, where an authorized Honda technician performed a diagnostic examination and informed him that his vehicle's evaporator was leaking Freon and needed to be replaced.

66.    Plaintiff Robinson paid $189.99 for the diagnostic and $1307.60 for the evaporator to be replaced and the system recharged with Freon on or around May 1, 2020.

67.    Plaintiff Robinson contacted a representative named Daniel from Headquarter Honda, who told Plaintiff Robinson that he would get in contact with corporate and make a goodwill request for the costs of the repairs; however, Plaintiff Robinson's goodwill request was denied. Honda corporate refused to cover the cost of repair because it claimed that he was 2,000 miles over the applicable warranty.

68.    Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Robinson of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

69.    Plaintiff Robinson has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost he incurred to diagnose and repair the Defect, and the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Robinson, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Michael Schwartz**

70.    Plaintiff Michael Schwartz ("Plaintiff Schwartz") is a citizen of the State of Oregon, and currently resides in Grants Pass, Oregon. In or around December 2016, Plaintiff Schwartz purchased a new 2017 Honda Civic from Lithia Honda, an authorized Honda dealer in Medford, Oregon, for personal, family, and/or household use.

71.    Prior to purchasing his Class Vehicle, Plaintiff Schwartz test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Schwartz relied on Honda's misrepresentations and omissions in deciding to purchase his vehicle.

72.    On or around May 1, 2020, with approximately 28,000 miles on the odometer, the AC system in Plaintiff Schwartz's Class Vehicle failed without warning.

73.    Plaintiff Schwartz brought his Class Vehicle to Lithia Honda in Medford, Oregon where an authorized Honda technician performed a diagnostic examination and informed him that his Class Vehicle's compressor was damaged.

74.    Plaintiff Schwartz paid $1,011.01 out of pocket for the diagnostic and to replace the compressor, but does not, and cannot, know whether the repairs cured the Defect in his Class Vehicle.

75.    On or around February 2, 2021 Plaintiff Schwartz was contacted by Defendant Honda after submitting a TSB claim. Defendant Honda denied the claim stating that the condenser warranty extension applied only to condensers and that compressor problems were not covered.

76.    Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Schwartz of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

77.    Plaintiff Schwartz has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost he incurred to diagnose and repair the Defect, and the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Schwartz, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Frank Costobile**

78.    Plaintiff Frank Costobile ("Plaintiff Costobile") is a citizen of the State of Pennsylvania and currently resides in Swarthmore, Pennsylvania. In or around March 2016, Plaintiff Costobile purchased a new 2016 Honda Civic from Piazza Honda, an authorized Honda dealer in Springfield, Pennsylvania, for personal, family, and/or household use.

79.    Prior to purchasing his Class Vehicle, Plaintiff Costobile test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of

which disclosed the Defect to Plaintiff. Plaintiff Costobile relied on Honda's misrepresentations and omissions in deciding to purchase his vehicle.

80.     On or around April 2, 2020, with approximately 25,200 miles on the odometer, the AC system in Plaintiff Costobile's Class Vehicle failed without warning.

81.     Plaintiff Costobile brought his Class Vehicle to Piazza Honda in Springfield, Pennsylvania where an authorized Honda technician informed him that the compressor had failed.

82.     Plaintiff Costobile paid $716.74 out of pocket to Piazza Honda to repair the compressor in his Class Vehicle. Plaintiff Costobile submitted a reimbursement request under TSB.

83.     On or around January 11, 2021, Plaintiff Costobile was contacted by Defendant Honda and was informed that Honda would not cover the compressor repair because the warranty extension only covered condensers.

84.     Due to the Defect's pervasive nature and the fact that AC System repairs appear to restore functionality only temporarily, Plaintiff Costobile cannot be confident that the repairs performed will permanently restore functionality to his AC System.

85.     Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Costobile of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

86.     Plaintiff Costobile has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations concerning the Defect, including but not limited to the out-of-pocket cost he incurred to diagnose the Defect, and the diminished value of his Class Vehicle. Had Defendants disclosed the Defect to Plaintiff Costobile, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Rachel Fairchild**

87.     Plaintiff Rachel Fairchild ("Plaintiff Fairchild") is a citizen of the State of Florida, and currently resides in Tampa, Florida. On February 6, 2016, Plaintiff Fairchild purchased a new 2016 Honda Civic from Hall Automotive, an authorized Honda dealer in Virginia Beach, Virginia, for personal, family, and/or household use.[5]

88.     Prior to purchasing her Class Vehicle, Plaintiff Fairchild test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features. Neither Honda nor its agents, dealers, or other representatives informed Plaintiff Fairchild of the Defect's existence at any time either prior to or following her purchase, whether at the point of sale or otherwise. Plaintiff Fairchild relied on Honda's misrepresentations and omissions in deciding to purchase her vehicle.

89.     In addition to touting many of the Class Vehicle's safety features, the vehicle's window sticker also stated that the vehicle was equipped with a functioning AC System, and was covered by Honda's New Vehicle Limited Warranty. The AC System and New Vehicle Limited Warranty were central to Plaintiff Fairchild's purchasing decision. Plaintiff Fairchild relied on Honda's representations regarding the AC System's functionality and the existence of the New Vehicle Limited Warranty in deciding to purchase her vehicle.

90.     In or around June 2017, with approximately 13,300 miles on the odometer, the AC System in Plaintiff Fairchild's Class Vehicle failed without warning.

91.     Plaintiff Fairchild subsequently brought her Class Vehicle to Hall Automotive, where an authorized Honda technician informed her the AC System was devoid of refrigerant due to a leak at the condenser's o-ring. The technician also

---

[5] See also discussion of prior *Elkins* litigation in Section IV(F)(10) below.

noted that he did not observe leaks elsewhere in the AC System. Honda agreed to cover these repairs pursuant to its New Vehicle Limited Warranty.

92.    Unfortunately, in approximately May 2019, with about 28,300 miles on the odometer, Plaintiff Fairchild's AC System failed yet again.

93.    On June 5, 2019, Plaintiff Fairchild tendered her Class Vehicle to Tampa Honda, an authorized Honda dealer in Tampa, Florida, where a technician informed her that she would need to pay a diagnostic fee in order for Tampa Honda to inspect and diagnose her vehicle. Plaintiff Fairchild agreed to pay a diagnostic fee of $144.26, inclusive of taxes.

94.    When she returned to reclaim her Class Vehicle later that same day, Tampa Honda informed her AC System's condenser was leaking and required replacement, and the System would need to be evacuated and recharged. Tampa Honda also informed her that because her Class Vehicle was by then out-of-warranty and the condenser itself had cracked, rather than the o-ring Hall Automotive previously repaired, the repairs needed to restore functionality to her AC System would cost $1019.76, exclusive of taxes, and that, because OEM replacement condensers were on nationwide backorder, it would not be able to repair her vehicle for some time.

95.    Due to her Class Vehicle's low mileage and age, and the fact that Honda should have permanently repaired her vehicle when it performed in-warranty repairs in 2017, Plaintiff Fairchild requested that Honda cover the required repairs pursuant to its New Vehicle Limited Warranty. Tampa Honda declined on grounds that the repairs her vehicle now required differed from the repairs Hall Automotive effected in June 2017, notwithstanding that in both instances the AC System's leaks emanated from the condenser.

96.    Due to the cost of the repairs needed to restore functionality to her Class Vehicle's AC System, her firm belief that Honda should have agreed to cover those repairs pursuant to its New Vehicle Limited Warranty, and the fact that she would

have to wait weeks for repairs just as the hottest summer months were approaching, Plaintiff Fairchild declined to authorize the repairs at that time.

97.    On August 8, 2019, Plaintiff Fairchild emailed Honda to express her dissatisfaction with her Class Vehicle due to the AC System's repeated failures and the repairs necessitated thereby, as well as Honda's inability to make OEM condensers available for repairs.

98.    On August 9, 2019, Honda responded by email. Honda informed Plaintiff Fairchild that it had implemented a warranty extension program for which her Class Vehicle might be eligible, but that she would need to schedule yet another diagnostic exam at a local Honda dealership. Honda further advised her that the warranty extension would cover only corrosion-related condenser failures, and that if her condenser did not display signs of corrosion her local dealer would charge her for both the diagnostic exam and subsequent repairs.

99.    Plaintiff Fairchild has yet to receive from Honda a letter notifying her of the warranty extension program's parameters or existence.

100.    Accordingly, sometime in January 2020, Plaintiff Fairchild called Tampa Honda to ask when it would repair her Class Vehicle. Tampa Honda informed her that a condenser was available and asked her to bring her Class Vehicle in for repairs, which she did on January 29, 2020.

101.    Because the Program covered Plaintiff Fairchild's condenser failure, Tampa Honda replaced it free of charge. However, when performing that repair, a technician determined her Class Vehicle's compressor also was leaking, and informed Plaintiff Fairchild that if she did not replace the compressor as well, her AC System would fail again "soon." Tampa Honda further explained that the Program only covered repair and/or replacement of certain "defective" condensers, and therefore she would need to pay approximately $1,400 out-of-pocket to replace her compressor.

102.    Because Plaintiff Fairchild did not want to experience another Summer without a functioning AC System, she agreed to the repairs. Plaintiff Fairchild paid Tampa Honda $1,504.65, inclusive of taxes, to replace her AC System's compressor and recharge the system with refrigerant. Plaintiff Fairchild also asked to keep the failed AC System components, but a Tampa Honda technician informed her that Honda would keep the parts in order to refurbish them.

103.    Due to the Defect's pervasive nature and the fact that AC System repairs appear to restore functionality only temporarily, Plaintiff Fairchild cannot be confident that the repairs Tampa Honda has performed will permanently restore functionality to her AC System.

104.    Plaintiff Fairchild has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations concerning the Defect, including but not limited to the out-of-pocket cost she incurred to diagnose the Defect, and the diminished value of her Class Vehicle. Had Honda disclosed the Defect to Plaintiff Fairchild, she would not have bought her Class Vehicle or would have paid less for it.

**Plaintiff James Tillery**

105.    Plaintiff James Tillery ("Plaintiff Tillery") is a citizen of the State of Virginia, and currently resides in Virginia Beach, Virginia. On or about April 5, 2016, Plaintiff Tillery purchased a new 2016 Honda Civic from Priority Honda, an authorized Honda dealer in Chesapeake, Virginia, for personal, family, and/or household use.

106.    Prior to purchasing his Class Vehicle, Plaintiff Tillery test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Tillery relied on Honda's misrepresentations and omissions in deciding to purchase his vehicle.

107.   With approximately 75,000 miles on the odometer, the AC system on Plaintiff Tillery's Class Vehicle failed without warning.

108.   Plaintiff Tillery brought his Class Vehicle to Priority Honda in Chesapeake, Virginia where an authorized Honda technician refilled the refrigerant. Plaintiff Tillery paid approximately $250.00 out of pocket for this service.

109.   Approximately ten months later, the AC system in Plaintiff Tillery's Class Vehicle failed a second time. Plaintiff Tillery then brought his Class Vehicle first to Priority Acura in Chesapeake, Virginia and then later to Priority Honda, which performed a diagnostic examination and informed him that his Class Vehicle's compressor had failed.

110.   Plaintiff Tillery paid $131.99 out of pocket for the diagnostic to be performed. Priority Honda gave a quote of approximately $1,700.00 to repair the compressor and would not repair it under the warranty.

111.   Plaintiff Tillery has not had the compressor in his Class Vehicle repaired.

112.   Due to the Defect's pervasive nature and the fact that AC System repairs appear to restore functionality only temporarily, Plaintiff Tillery cannot be confident that the repairs Honda has yet to perform will permanently restore functionality to his AC System.

113.   Neither Honda nor its agents, dealers, or other representatives informed Plaintiff Tillery of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise.

114.   Plaintiff Tillery has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations concerning the Defect, including but not limited to the out-of-pocket cost he incurred to diagnose the Defect, and the diminished value of his Class Vehicle. Had Honda disclosed the Defect to Plaintiff Tillery, he would not have bought his Class Vehicle or would have paid less for it.

**Plaintiff Lingyan Yin**

115.   Plaintiff Lingyan Yin ("Plaintiff Yin") is a citizen of the State of Washington, and currently resides in Kirkland, Washington. On or around May 28, 2016, Plaintiff Yin purchased a new 2016 Honda Civic from Honda of Kirkland an authorized Honda dealer in Kirkland, Washington for personal, family, and/or household use.

116.   Prior to purchasing her Class Vehicle, Plaintiff Yin test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Honda sales representatives concerning the vehicle's features, none of which disclosed the Defect to Plaintiff. Plaintiff Yin relied on Honda's misrepresentations and omissions in deciding to purchase her vehicle.

117.   In or around May 2019, with approximately 4,000 miles on the odometer, the AC system in Plaintiff Yin's Class Vehicle failed without warning.

118.   Plaintiff Yin brought her Class Vehicle to Honda of Kirkland in Kirkland, Washington where an authorized Honda technician performed a diagnostic examination and informed her that her Class Vehicle's condenser failed and replaced the condenser under warranty.

119.   On or around March 20, 2020, the AC system in Plaintiff Yin's Class Vehicle failed a second time. Plaintiff Yin contacted Defendant Honda and was told that her Class Vehicle's compressor had failed, but the vehicle was now out of warranty. Defendant Honda gave Plaintiff Yin approximately $200.00 in credit which did not cover the entire cost of repair.

120.   Plaintiff Yin paid approximately $1,600.00 out of pocket to replace her Class Vehicle's compressor.

121.   Neither Honda nor its agents, dealers, or other representatives informed Plaintiff Yin of the Defect's existence at any time either prior to or following her purchase, whether at the point of sale or otherwise.

122.   Plaintiff Yin has suffered an ascertainable loss as a result of Honda's omissions and/or misrepresentations associated with the Defect, including but not limited to the out of pocket cost she incurred to diagnose and repair the Defect, and the diminished value of her Class Vehicle. Had Honda disclosed the Defect to Plaintiff Yin, she would not have bought her Class Vehicle or would have paid less for it.

**B. <u>The AC Systems in Class Vehicles</u>**

123.   Automotive AC Systems once were considered a luxury, but for decades have come standard in virtually every vehicle sold in the United States. Consumers now not only expect their vehicles to come equipped with a dependable AC System, they expect that system to work through their vehicle's service life.

124.   However, since the date of their production and before they are placed into the stream of commerce, the Class Vehicles' AC Systems suffer from a common, latent defect that eventually manifests and forces consumers to choose between spending hundreds (if not thousands) of dollars in repairs or foregoing a feature without which they cannot safely and comfortably operate their vehicle.

125.   Specifically, and as described further herein, due to a defect in design, and/or the materials from and the manner in which Honda manufactures them and their constituent components, Class Vehicle AC Systems cannot perform as warranted and expected in ordinary and foreseeable driving conditions (the "AC System Defect" or "Defect").

126.   The AC System in the Class Vehicles is a pressurized, self-contained system composed of three main components: the compressor, the condenser, and the evaporator, each of which is connected to the other components by hoses and lines. A generalized diagram of the type of air conditioning system found in the Class Vehicles is below in **Figure 1**, with component parts labeled and refrigerant flow path and temperature indicated by colored arrows.

1

2

3

4



**Figure 1**

127.   A chemical refrigerant flows through the AC System, alternating between a liquid and a gas depending on the pressure it is subjected to in the various components it flows through during its continuous cycle through the System.

128.   Class Vehicle AC Systems operate as follows. The compressor is responsible for compressing the refrigerant gas. Compression causes the refrigerant to get very hot. The hot, compressed refrigerant gas is then sent through a discharge line to the condenser.

129.   Because the hose connecting the compressor and condenser—the "refrigerant hose"—is a high-pressure side hose, it experiences approximately 350 psi of pressure during system operation, in addition to vibration and jostling during normal vehicle operation. If the hose cracks, refrigerant may leak, impairing the entire AC System's functionality.

130.    If the compressor successfully forces refrigerant into the refrigerant hose, the pressurized refrigerant ultimately reaches the condenser. The condenser is a series of coils over which outside air passes to cool the compressed refrigerant gas and condense it into a cold liquid. The cold liquid refrigerant then passes through the receiver-drier, a canister containing desiccant to absorb moisture, and then through an expansion valve to change it from a high-pressure liquid to a low-pressure liquid mist before entering the evaporator.

131.    The evaporator is an array of tubes that the refrigerant liquid mist flows through, chilling the tubes. As the low-pressure liquid refrigerant mist flows through the evaporator, a blower motor pushes air across the cold tubes of the evaporator to deliver cooled air into the passenger compartment of the automobile.

132.    Each of the foregoing components is essential to the proper operation of the AC System. Should one component fail, the whole System ceases to operate. However, neither the AC System nor its constituent components are considered wear parts. On information and belief, Honda, like consumers, expects AC Systems to perform throughout Class Vehicles' projected service life, which is well in excess of 100,000 miles.

133.    Moreover, automotive AC systems, including the AC Systems in Class Vehicles, are "closed loop" systems, i.e., the system does not consume the gaseous refrigerant it uses to cool vehicle cabins and should not allow refrigerant to escape the system.  A vehicle's AC system will cease to produce cold air only if a system component ceases to function properly, or if the system develops a leak that allows the refrigerant to escape.

## C.   The Defect

134.   The "Honda Civic," the vehicle model at the heart of this litigation, is one of Honda's most popular U.S. offerings. Honda has sold approximately 1.4 million Class Vehicles in the United States.[6]

135.   In 2015, Honda began to market, sell and warrant Class Vehicles, the Tenth Generation of its popular Civic model. On information and belief, the AC Systems in all Class Vehicles—MY 2016-19 Civics—are identical in terms of both their design and constituent components.

136.   Reasonable consumers expect that AC Systems in Class Vehicles, as in most any vehicle, are designed and manufactured to function for periods and mileages substantially in excess of those specified in Honda's warranties. Honda's customers, including Plaintiffs and Class Members, justifiably expect to enjoy the use of an automobile air conditioning system throughout the vehicle's service life.

137.   Class Vehicle AC Systems, however, are defective and expose vehicle owners and occupants to significant and unreasonable safety risks.

138.   The AC System is not sufficiently strong and durable and is prone to fail during ordinary use and operation and well in advance of its expected useful life. This insufficiency leads to System parts cracking, which allows refrigerant to leak out of the System and causes the System to lose pressure, which inhibits the AC System's ability to produce cool air as advertised and expected.

139.   Honda knew or should have known that designing and manufacturing insufficiently strong and durable AC System components could lead to cracking, refrigerant leaks, lost pressurization, and AC System failure under normal and foreseeable use and conditions.

---

[6] https://www.goodcarbadcar.net/2011/01/honda-civic-sales-figures/ (last visited May 12, 2021).

140.   AC System failure occurs at relatively low mileages, often just outside the warranty period, suddenly and without warning, and the Defect impacts nearly every AC System component.

141.   As one authorized Honda technician explained in a Civic owners' forum, in fifteen years of servicing Honda vehicles "this has been the worst a/c related issue I've seen. This sort of thing usually always happens when we are forced to do a refrigerant type change. Happened when we went from R12 to R134a, and now it's happening from R134a to R1234yf."[7] That same technician also noted that the Defect seemed to impact all three major System components: the condenser, compressor and evaporator.[8]

142.   A frequent visitor to that same forum[9] noted that other Honda Master Technicians had echoed his conclusions:



143.   A leak in either of the AC System's three critical components, or the various hoses and lines that connect them, not only will cause the System to

---

[7] 2016-2019 Evaporator failures/leaks | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).
[8] Id.
[9] My A/C took a poop...*Dealership update* | Page 4 | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).

hemorrhage refrigerant, rendering the System inoperable, they also can cause other System components to fail. For example, if Class Vehicles begin to hemorrhage refrigerant due to a leak in the condenser, the compressor may seize when refrigerant ceases to pass through it.

144.    Because of the high number of failures, AC System replacement parts, including condensers,[10] compressors[11] and evaporators[12] are on national backorder and the wait for replacement parts is long – often many months – during which time Plaintiffs and Class Members must suffer without a functioning AC System in their Vehicles.

145.    Class Members also report that Honda's repairs are only temporary. Because the Defect is *systemic*, when Honda replaces individual failed AC System components with equally defective parts, Class Vehicle AC Systems will often manifest the Defect again following initial repairs.

146.    For example, the consumer referenced below[13] reports that in approximately four years of ownership, her vehicle developed leaks in, and required replacement of (in order), the compressor, condenser, and evaporator, only one of which was replaced under warranty.

---

[10] https://www.civicx.com/threads/air-conditioning-condenser-issue-is-real.24701/ (last visited April 21, 2021).
[11] *See* **Exhibit A**, Honda message to authorized dealers regarding "2016-2020 Honda Civic Compressor Replacement" ("We've noticed an unprecedented demand for A/C compressors which at times has created a backorder situation.").
[12] 2016-2019 Evaporator failures/leaks | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (posted Oct. 15, 2020) (last visited April 21, 2021).
[13] 2016-2019 Evaporator failures/leaks | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).

1
2
3
4
5
6
7
8
9
10
11



12    147.   Other Class members similarly report[14] replacing seemingly every

13  major AC System component only for the Defect to continue to manifest thereafter.

14
15
16
17
18
19
20
21
22
23
24



25  Simply put, there does not exist a single "fix" capable of remediating the systemic

26  AC System Defect.

27

28

---

[14] 2016 A/C Compressor Leak | Page 3 | 2016+ Honda Civic Forum (10th Gen) - Type R Forum,
Si Forum - CivicX.com (last visited April 21, 2021).

148.   Further, because the Defect affects internal, mechanical components and manifests suddenly, Plaintiffs and Class Members have no warning that the Defect has manifested until it causes the entire AC System to fail completely.

149.    Honda could have disclosed the Defect to customers in advertising or at the point of sale or lease, but instead elected to conceal the Defect and force its customers to bear the costs of remediating a Defect of which Honda has been aware since prior to placing Class Vehicles into the stream of commerce.

## D. The Defect Poses a Safety Risk to Vehicle Owners and Occupants

150.   The AC System's inability to quickly lower the inside temperature of the vehicle creates a significant safety hazard.

151.   First, when the vehicle's windshield accumulates moisture, the Defect prevents Plaintiffs and Class Members from defogging their windshields using the AC System, decreasing visibility and increasing the risk of accident, as numerous Class Members have noted.[15]

152.   Defogging is of particular importance to owners of Class Vehicles, because Class members report[16] the vehicle's windshields tend to fog both easily and frequently.

---

[15]*See, e.g.,*
https://www.carcomplaints.com/Honda/Civic/2016/AC_heater/AC_not_working_properly.shtml (posted Mar. 12, 2018) (last visited April 21, 2021).
[16] https://www.civicx.com/forum/threads/heater-defrost-and-fog.55661/ (last visited on April 21, 2021).

153.   The Defect also poses a safety risk to Vehicle occupants because a Vehicle with a non-functioning AC System subjects occupants to unsafely high temperatures, particularly the young and elderly.

154.   Lastly, if Class Vehicles begin to hemorrhage refrigerant due to a leak caused by the Defect, the compressor may seize when refrigerant ceases to pass through it. Should the compressor seize during vehicle operation, the vehicle may stall, significantly increasing the risk of an accident and exposing occupants to unreasonable safety risks.

155.   Numerous absent Class Members have informed NHTSA, and Honda directly, that the AC System Defect poses a safety risk, as illustrated by the following examples:[17]

> "There was a failure of the AC condenser causing the need to replace the whole unit, as well as the sensor. The

---

[17] For these and other customer complaints quoted in this Complaint, quotes are left as written, except that those originally in all-caps have been changed to sentence case. Due to the sheer number of typographical and grammatical errors, [sic] notation has not been used. Any emphasis has been added, unless otherwise noted.

corporate Honda representative even admitted on the
phone that they dealerships have reported similar issues
with the condensers on the civic models, including units
delivered from the factor that had already failed. A simple
search of credited automotive review sites show many
examples for this model year, where the AC units have
failed. As the corporate office has failed to issues a
voluntary recall for this issue, I ask that you look into this
and protect the consumer. Thank you." NHTSA ODI
11208305 (incident date May 17, 2019).

"Air conditioning system went out. Blows warm air and
makes hissing noises. It takes a very long time to defog the
windshield reducing visibility while driving and making it
uncomfortable to drive. The vehicles was in motion when
the problem was first noticed. It takes over 10 minutes to
defog the vehicle." NHTSA 11145156 (date of incident
October 18, 2018).

"Randomly heard a pop, and the AC stopped working.
Took car to a dealership that tried to tell me it was road
hazard damage. After leaving Honda I called back to
inquire more information, Honda refused to show me the
issue but told me they charge me $200 for a diagnosis fee.
Something seemed wrong. Checked online and saw
thousands of complaints for the same issue. Called Honda
corporate and was told to take it for a second opinion
elsewhere. They knew about the AC issues and said it
would be covered under warranty except my car is out of
warranty because of high mileage. Without the AC the
defogger doesn't work. This is extremely unsafe in certain
weather conditions. Not sure how to get Honda to recall
this but it seems they have a history of AC units not
working properly in cars. If someone dies on the roadway
because of a visibility issue, Honda will have a major
lawsuit ahead of them. Help us Honda owners get the

recall we deserve so we can safely drive the cars we spend so much money on. This is unsafe and not okay!" NHTSA ODI 11195910 (incident date March 12, 2018).

"The AC compressor and condenser are both leaking. One dealership tried to tell me they were leaking because a rock hit it and caused the damage, and it costs $600 to fix. But upon proper diagnosis from another dealership, they did tell me both the compressor and condenser are leaking, and it was not caused by road hazard damage… My car is out of warranty, so the dealership had to file a claim through good will. They said they were willing to pay 50/50, which leaves me to pay $842 before taxes to get this issue fixed. There needs to be a better solution. This is unsafe that all of these cars having leaking condensers and compressors and it is a scam to have the customer pay anything to fix an issue like this…" NHTSA ODI 11114617 (incident date July 27, 2018).

**E. Honda's Warranty and Repair Practices**

156. Honda issues with every new Class Vehicle a bumper-to-bumper "New Vehicle Limited Warranty" (NVLW) through which it agrees to cure at no charge defects in materials or workmanship that exist within the first three years or 36,000 miles of purchase. An exemplar of the warranty booklet that accompanies every Class Vehicle Honda sold is appended hereto as **Exhibit B**.

157. Honda also provided Class Members who purchased Certified Pre-Owned Class Vehicles a 1-year/12,000 mile bumper-to-bumper Limited Warranty.

158. Honda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicle is completed, therefore buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

159. Honda also provides an express written warranty with all Honda replacement parts. The AC System and its constituent components are covered by

Honda's replacement part warranty, which promises that Honda will repair or replace any covered part that was originally installed by a Honda dealership at the consumer's expense for one (1) year, and will cover the costs of both the part and any labor required to complete the repair.

160.   Honda's New Vehicle Limited Warranty should cover each and every repair the Defect necessitates, since the NVLW covers all repairs required as a result of defects in material or workmanship, including the Defect, for three years or 36,000 miles (whichever comes first).

161.   In order to secure warranty coverage pursuant to any of the foregoing, Plaintiffs and Class Members need only tender their Vehicle to a Honda authorized dealership for repairs. *See* **Exhibit B** at 37.

162.   The majority of Class Vehicles, however, manifest the Defect only after any applicable base warranties have expired – often *just* outside the warranty period, forcing Plaintiffs and Class Members to pay between $150 and $2000 out of pocket. Yet dealerships complete these critical repairs using the same defective Honda parts, often months after the Defect manifests because many System components are backordered.

163.   Even where Class Members tender their Vehicles for repair within the warranty period, Honda often evades its warranty obligations.

164.   First, because Honda effects repairs using equally defective replacement parts, Honda's in-warranty "fixes" remedy the Defect only temporarily. Class Members thus report receiving warranty coverage when Defect first manifests, only to later discover repairs were ineffective, that other components (or the very same components) have failed, and that they will need to pay out-of-pocket for subsequent repairs.

165.   Second, Honda obstructs Class Members' efforts to secure free repairs—as Honda agrees to in its NVLW—by requiring them to pay a "diagnostic fee" ranging from approximately $100-$415 prior to authorized dealers inspecting

Class Vehicles. Upon completing their inspection, authorized dealers often claim AC Systems failed due to damage caused by "road debris" rather than the inherent AC System Defect that plagues Class Vehicles, and thus refuse to effect repairs at no cost.

166.   Third, Class Members claim Honda impedes their ability to secure warranty coverage by conducting a diagnostic inspection only to report that the System is operational or the failure cannot be replicated, or simply refill the system with refrigerant. Despite agreeing to undergo this diagnostic testing, these Class Members eventually need to replace their AC System, often at their own expense after any applicable warranties have expired:

> For you guys having so many intermittent problems with the a.c., and the dealer either keeps fixing it, or saying they can't duplicate the problem....Start video taping it with a thermometer up by the vent and saving your service records.
>
> You all know my story most likely and I'm getting a brand new car due to issues very similar to what some of you are describing with the a.c. Not trying to hijack the thread, but im proof dealers will tell you there's nothing wrong when there is.[18]

167.   Because Honda's "fixes" are anything but actual repairs to the AC System, and Honda merely shifts onto Plaintiffs and Class Members the expense of continuously replacing AC System assemblies that it has long known to be defective, Honda's warranty fails of its essential purpose, and Class Members' recovery is not

---

[18] https://www.civicx.com/threads/air-conditioning-condenser-issue-is-real.24701/page-6 (posted August 17, 2018) (last visited April 21, 2021).

restricted to any written warranties promising to repair and/or correct defects, and they may seek all remedies as allowed by law.

168.    Moreover, in its capacity as a warrantor, Honda's knowledge of the Defect inherent in Class Vehicles renders its efforts to limit the duration of express and implied warranties in a manner that would exclude coverage of the Defect unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void. The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Honda and Plaintiffs and the other Class Members, as, at the time of purchase and lease, Plaintiffs and the other Class Members had no other options for purchasing warranty coverage other than directly from Honda.

169.    The    limitations    on    the    warranties    also    are    substantively unconscionable. Honda knew that Class Vehicles are defective and would continue to pose safety risks after the warranties purportedly expired. Honda nevertheless failed to disclose the Defect to Plaintiffs and the other Class Members while continuing to market Class Vehicles as safe and reliable, thus Honda's enforcement of the durational limitations purportedly applicable those warranties in harsh and shocks the conscience.

## F. **Honda's Longstanding Knowledge of the Defect**

170.    Honda learned of the AC System Defect at least as early as 2015, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; investigations leading to dealer service bulletins; repair data; replacement part sales date; early consumer complaints made directly to Honda, collected by the NHTSA ODI, and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers; as well as through other internal sources unavailable to Plaintiffs prior to discovery.

171.    Moreover, Honda has faced a prior class action lawsuit for the same or substantially similar defects found in its 2005 – 2007 Odyssey vehicles.  This action, styled *Alin v. Honda Motor Company, LTD. Et al*, No.: 2:08-cv-4825 (KSH)(PS), was filed in the District of New Jersey on September 25, 2008.

1.  **Honda Gained Knowledge of the AC System Defect from Pre-Release Design, Manufacture, Engineering, and Testing Data.**

172.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles, Honda necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's AC System and the expected conditions and uses the Systems would encounter in ordinary customer service.

173.    An adequate pre-release analysis of the design, engineering, and production of AC systems equipped in Class Vehicles did reveal, or should have revealed, to Honda that the AC systems are defective and prone to prematurely fail well in advance of their expected useful life.

174.    Honda publicly touts pre- and post-production quality assurance processes it implemented to "aim for 120% product quality" because even "if 99% of the products we make are perfect … the customers who become the owners of the remaining 1% will surely consider their products 100% defective [,]" and "[i]t is unacceptable that even one customer in a thousand – even one customer in ten thousand – should receive a defective product."[19]

175.    Consistent with its aim, Honda audits its suppliers "for both the production preparation and mass-production stages of supplier operations. Experts in the development and production of individual parts visit manufacturing facilities

---

[19] https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf, at 66 (last visited April 13, 2021).

and conduct audits of supplier's quality systems and their implementation. Honda then works to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[20] Honda's extensive and continuous pre- and post-release audits of its AC System supplier would have revealed the Air Conditioning Systems it equips in Class Vehicles are uniformly defective and virtually guaranteed to fail when they should last much longer than they do.

176.  Honda also conducts significant durability testing on all of its vehicles, including Class Vehicles, which mark the first Civic vehicles equipped with AC Systems that utilize R-1234yf refrigerant.

177.  Honda's decision to use R-1234yf in Class Vehicles necessitated significant changes to the AC System used in prior generations of Honda Civic vehicles, particularly to the condenser, compressor, and evaporator.

178.  Because of these changes, Honda subjected Class Vehicles' SC Systems to considerable pre-release testing, because Honda asserts tit "subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues."[21] Honda then "disassembles[s] vehicles used in the test drives into *every single part* and verif[ies] that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, [the Company] is able to ensure a high level of quality and reliability."[22]

179.  As a result, Honda knew or should have known that the AC systems in Class Vehicles suffer from defects in materials, workmanship and/or design, and are predisposed to premature failure.

---

[20] *Id.* at 59.
[21] *Id.*
[22] *Id.* (emphasis added).

## 2. **Honda's Knowledge of the Defect from Repair Data**

180. Honda also knew or should have known about the AC System Defect because of the large number of requests for AC System repairs and part replacements made during and after the Class Vehicles' warranty periods, and the fact that refrigerant and replacement components are, or were, on nationwide backorder.

181. On information and belief, Honda, like all vehicle manufacturers, communicates with its authorized service technicians in order to identify pervasive vehicle defects, as well as root causes and potential repairs. Honda collects and analyzes field date including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, part sales reports, and warranty claims data, in order to determine whether a defect exists and should be covered under warranty or through a goodwill program.

182. Honda, in fact, tracks maintenance performed on Class Vehicles by authorized Honda dealers. Data culled from these records concerning AC System repairs, whether in- or out-of-warranty, undoubtedly alerted Honda to the scope of this systemic Defect.

183. Honda also reviews and analyzes warranty data submitted by its dealerships and authorized technicians to identify defect trends in its vehicles. Honda indicates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Honda with detailed documentation of the problem and the fix that described the complaint, cause, and correction, and save the defective component in case Honda later decides to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Honda because Honda will not reimburse service centers for the repair if the complaint, cause, and correction are not sufficiently described. Due to Honda's efforts to monitor defect

trends and the sheer number of repairs and warranty/goodwill requests made in connection with the Defect, Honda knew or should have known of the Defect.

### 3. **Honda's Knowledge of the AC System Defect Gathered from the Large Number of Replacement AC System Parts Ordered from Honda**

184.    Upon information and belief, Honda also knew or should have known about the AC System Defect because of the higher-than-expected number of replacement AC System parts ordered from Honda, which should have alerted Honda that an overwhelming number of Class Vehicles had manifested the Defect.

185.    Upon information and belief, Honda service centers use Honda replacement parts that they order directly from Honda. Furthermore, independent vehicle repair shops that service Class Vehicles also order OEM parts directly from Honda. Therefore, Honda does or should have detailed and accurate data regarding the number and frequency of replacement part orders.

186.    Additionally, because the three most critical AC System components—the condenser, compressor, and evaporator—have all been backordered at various times, Honda cannot credibly claim to have been unaware of the high demand for replacement parts.

187.    The ongoing high sales of replacement AC System parts was certainly known to Honda and should have alerted Honda that its AC Systems are and were defective.

### 4. **Honda's Knowledge of the AC System Defect Gained from Class Member Complaints Made Directly to Honda**

188.    Honda also knew or should have known about the AC System Defect because numerous consumers complained directly to Honda and its authorized dealers about the AC System Defect. The large number of complaints, and the consistency of their descriptions of AC System failures in the Class Vehicles, should

have alerted or actually did alert Honda to this serious Defect affecting all Class Vehicles.

189.    The full universe of complaints made directly to Honda about the AC System Defect is information presently in Honda's exclusive custody and control and is not available to Plaintiffs prior to discovery. On information and belief, however, many Class Vehicle owners complained directly to Honda and Honda dealerships about the AC System Defect in their vehicles. Some instances of these direct-to-Honda complaints were reported in posts made on Honda Civic-related online forums, several of which also demonstrate that the Defect often manifests in Class Vehicles prior to sale and that Honda is well aware of the pervasiveness thereof.

> "I had mine at the dealership today. New compressor on order but can't me back in until May 11th to actually fix it. Apparently this is a common problem right now."[23] (Posted on April 30, 2018).

> "I had mine in 2 weeks ago. The tech refilled it and it was working again at first but just in the past few days it's started blowing warm air again. There's also a hissing sound coming from my vents while it's on. I have an appointment at 8am tomorrow to have it looked at again so I'll see what happens. Kinda getting fed up of this car. I've had so many annoying issues with it in the past year. I've had my 2013 Civic for 5 years and it hasn't had a single problem."[24] (Posted on May 21, 2018).

> "So I purchased a black ctr. The car arrived June 28th. I attempted to pick up the car two days later and when I was on the way dealer called me and said they're having problems with ac blowing cold air. I wait around all day and then got news the whole ac has to be replaced … The

---

[23] https://www.civicx.com/threads/16-civic-ac-not-working.23516/page-2 (last visited April 21, 2021).
[24] Id.

car has 11 miles when I saw It in service dept going through diagnostics."[25] (Posted July 6, 2017).

"Bought a brand new 2017 Honda Civic Hatchback EX trim couple months back. So far I am loving it and already put on 4000 miles on the car. I live in Southern California and its getting pretty warm down here. However, I noticed that my AC is not as cold as it was when I first bought it. I took it to the dealership and they told me that is working just fine at 45 degrees but outside humidity/air temps play a role in the 'feeling.'"[26] (Posted May 24, 2017).

"I have 2016 civic LX. 1st they said needs Freon recharge, 2nd they said compressor need to be replace and still same problem. 3rd now they said the a/c coil is not working need to be replace. **I called the honda America corp. 800-999-1009 and I report this problem to them and they said they will call the dealer and the service mng**."[27] (Posted August 5, 2016).

"The replacement line (just heard now that's what they replaced) came in last Friday, but they've put it in and there are still problems. **Apparently they are working with Honda to find the problem. My advisor mentioned that it's the first case like this at our dealership, but he was told Honda is aware of similar problems on "other models" (I assume he means the Civic)**. Not they want to replace the compressor, but again they have not ETA just yet. They will call me tomorrow once they find out. At 20 days so far in the shop."[28] (Posted July 11, 2016).

"Just heard back from my dealer. They found the leak (I'll have to ask where when I go by there later), but they don't know when they can get replacement parts in (they

---

[25] https://www.civicx.com/threads/air-condition-being-replaced-on-brand-new-ctr.13123/ (last visited April 21, 2021).
[26] https://honda-tech.com/forums/honda-civic-2016-current-165/2017-honda-civic-hatchback-ac-question-3299430/ (last visited April 21, 2021).
[27] https://www.civicx.com/threads/ac-issues.4396/ (last visited April 21, 2021).
[28] https://www.civicx.com/threads/a-c-help.4129/ (last visited April 21, 2021).

literally have no timeframe for this, which they said was unusual."[29] (Posted June 23, 2016).

"I dropped off my car at the dealership this morning and just heard back from them. They evacuated and recharged the AC system because it was really low on refrigerant. They thought that was really odd for a new car, so they did a dye test as well, but could not find a leak. Apparently the problem is still there, though, so they'll need to keep it another day so they can do more tests."[30] (Posted June 22, 2016).

"So I have theses AC issues on my car. First I got rid of all the leaks & was told that the Compressor is the main problem. The AC is intermittent. It blows cold for few mins & warm/hot for few. The compressor engages on and off. I went to get this checked & thought of replacing the Clutch Assembly, but was told by a guy at a shop that the whole compressor needs to be replaced coz it is not holding any pressure & even the 'dryer.' So now after spending close to $300 already till date (AC Checks, Leaks, etc etc), I though replacing the Clutch Assembly … will work. But now it looks more than that. As per what the shop guy said, it will cost me around $850 to replace the compressor with dryer & get the vents blow cold!"[31] (Posted July 21, 2015).

190.    As the above sampling of complaints shows, Class Members have been vocal in complaining directly to Honda and its authorized dealers about the AC System Defect, and the number and consistency of their complaints should have alerted Honda to the scope and pervasiveness thereof.

---

[29] *Id.*
[30] *Id.*
[31] https://www.civicforums.com/forums/36-mechanical-problems-vehicle-issues-fix-forum/364684-ac-compressor-issues.html (last visited April 21, 2021).

### 5. **Honda's Knowledge of the AC System Defect from Class Member Complaints Lodged with NHTSA**

191.    In addition to complaints made directly to Honda, many Class Vehicle owners and lessees lodged complaints about the AC System Defect with NHTSA ODI.

192.    Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement, backed by criminal penalties for violation, of confidential disclosure of defects by automakers to NHTSA, including field reports, customer complaints, and warranty data.[32]

193.    Automakers, including Honda, should (and do) monitor NHTSA databases for consumer complaints regarding their automobiles as part of the automakers' ongoing obligation to identify potential defects in their vehicles, such as failures of AC Systems to emit cold air as intended.

194.    From its monitoring of the NHTSA databases, Honda knew or should have known of the many complaints about AC System Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Honda to the AC System Defect.

195.    A sampling of the publicly available complaints lodged with NHTSA ODI, includes some of those quoted above, as well as the following, all of which reflect the Defect's systemic nature:

> "My car ac won't work and honda dealers want me to pay for diagnosis when they now there is an existing issue with the A/C condenser, compressor and evaporator" NHTSA ODI 11407728 (incident date April 12, 2021).

> "Purchased 2017 Honda Civic new from dealership with standard new car warranty. At 41,000 miles air conditioning stopped working. Brought vehicle to

---

[32] *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

dealership and was told new compressor was needed and repair would cost $986 + tax. Brought vehicle because reputation for reliability. Something like this has never happened before and dealership even admitted that there has been sever problem with air conditioning compressors for this particular year…" NHTSA ODI 11228283 (incident date June 27, 2019)

"Air conditioning system does not work. Dealer wants $2,382.15 to replace A/C compressor w/ clutch and coil ($1500.26), condenser ($599.04), evacuate and recharge complete ($159.95) … this year same problem, no cold air and now being told entire system is defective. I can not properly clear my front windshield because does not properly because I don't have A/C." NHTSA ODI 11208084 (incident May 16, 2019).

"A/C evaporator coil had bad weld. $1600 repair after evaporator coil, Evac, and refill of Freon." NHTSA 11210135 (date of incident May 13, 2019).

"There was a failure of the AC condenser causing the need to replace the whole unit, as well as the sensor. **The corporate Honda representative even admitted on the phone that their dealerships have reported similar issues with the condensers on the civic models, including units delivered from the factor that had already failed**. A simple search of credited automotive review sites shown many examples from this model year, where the AC units have failed. As the corporate office has failed to issues a voluntary recall for this issue, I ask that you look into this and protect the consumer. Thank you." NHTSA 11208305 (date of incident May 17, 2019).

"In the summer of 2018, with the air conditioning system on, it was blowing warm air on the driver side while the passenger side discharging cold air. Took the car to the dealer for inspection. The service department informed us there was a leak. A dye was added to the recharged refrigerant. Early this month, April, the AC wasn't provided any cooling. Took the car to the dealer and was

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

informed that the AC compressor along with refrigerant piping was leaking and need to be replaced." NHTSA 11194751 (date of incident March 26, 2019).

"My vehicle has been having issue with the A/C for a couple of week. Two days ago my A/C stop working so I took it to my local Honda dealer to take a look at it. They told me that the A/C compressor has failed and it's not covered under warranty fir to my car having 41K miles. I tried to explain that the car is only a year old. They (dealership) did not want to cover it under warranty due to the miles. The repair cost was $1,500. I have read online that several buyer have had this problem. The dealer also mention that they have been receiving a lot of cars with the same issue…" NHTSA ODI 11153170 (date of incident November 19, 2018).

"AC on the driver side warm air passenger side cold air then nothing. This started while driving on the highway august 3rd 2018 and stopped working august 6th 2018." NHTSA ODI 11118112 (incident date August 3, 2018).

"The AC compressor and condenser are both leaking … upon proper diagnosis from another dealership, they did tell me both the compressor and condenser are leaking and it was not caused by road hazard damage…" NHTSA ODI 11114617 (incident date July 27, 2018).

"AC line was never connected from the factory with built. Caused excessive water and passenger side floor board and caused mold on the carpet." NHTSA 11109873 (date of incident July 6, 2018).

"Air conditioning system does not work. Dealer wants $2,382.15 to replace A/C compressor with clutch and coil ($1500.26), condenser ($599.04), evacuate and recharge complete ($159.95) filters and air cleaners ($122.90), air ventilation system cleaning ($89.95). 2016 Honda Civic ex 70,491 miles. Last year I brought the car to dealer and they vacuumed and refilled the system ($159.95). This year same problem, no cold air and now being told entire

system is defective. I can not properly clear my front windshield because does not work properly because I don't have A/C." NHTSA ODI 11208084 (incident date May 16, 2018).

"Car is only one yr old, not even 33,000 miles air conditioner blowing hot air, many of my friends have same problem. Honda won't honor warranty. Wants to charge over $500.00 to start." NHTSA ODI 11025487 (incident date September 25, 2017).

"Just had a problem with the A/C. Car would blow hot air after 15 mins of driving. Had to completely turn off air and leave it off for ½ hour or more to get A/C to work." NHTSA ODI 10903307 (incident date July 14, 2016).

196.    As the above sampling of complaints makes clear, consumers have been vocal in complaining to NHTSA ODI about the AC System Defect and Honda was, or should have been, aware of and monitoring those complaints, and thus should have known about the AC System Defect.

**6.  Honda's Knowledge of the AC System Defect from Class Member Complaints on Third-Party Websites**

197.    In addition to complaints made directly to Honda and collected by NHTSA ODI, many Class Vehicle owners and lessees posted complaints about the AC System Defect—and its effect on each of the condenser, compressor, and evaporator[33]—on public online vehicle owner forums.

198.    Examples of these types of postings are below:

"Glitches in the apple car play. Ac compressor. Broke after 3 years. Lots of recalls. Battery dies quick due to all the technology in car. Glitches causing the car to die. Too

_____

[33] https://www.civicx.com/forum/threads/2016-a-c-compressor-leak.24603/page-5 (posted June 29, 2020) (last visited April 21, 2021).

much pressure on door will cause car to say door open and lights will keep flashing on."[34] (Posted on April 3, 2021).

"I love the look and feel of my car, as well as all of the features in it. I enjoy driving it and I'm glad I purchased it. I am not, however, happy that my a/c has leaked twice since April, and now I need a new compressor. I am unsure how happy I am with Honda's customer service at this point."[35] (Posted on April 3, 2021).

"The car is comfortable and drives nice, however 2 months after I bought it, the radio computer started to act up, after that the a/c compressor and then the struts. I have had the computer problem already twice so I really do not recommend the vehicle, at least not the 2016."[36] (Posted on April 3, 2021).

"However, I cannot give it 5 stars because the air conditioner blew out after only 40000 miles. This was no longer covered under warranty and Honda want to charge me $2k to fix this. In my opinion this is still a new car. The air conditioning issue is a known issue and Honda refuses to look into it and compensate customers."[37] (Posted on April 2, 2021).

"My only complaint is that I noticed the air conditioning didn't work once it got warm. It was under warranty, so they fixed it for free, but after a month or so it stopped working again."[38] (Posted on April 2, 2021).

"It is a reliable ride, but the condenser and compressor were having issues at the 30000 mile mark, which is a known issue with civics."[39] (Posted on April 2, 2021).

---

[34] https://www.vehiclehistory.com/report/honda/civic/2016/consumer-reviews?keyword=problems (Last visited April 21, 2021).
[35] Id.
[36] Id.
[37] Id.
[38] Id.
[39] Id.

"I would say the probability is 100%. Mine failed about a month ago. Was hoping it was the condenser that would be covered but I had to pay 445 for a diagnostic fee since it's the evaporator that failed. Another common issue but Honda won't acknowledge that it's their shitty system. Honestly will never buy a Honda again. I had issues with my 18 Civic Si already. When I got the car the shifting was just awful. It feels like I'm grinding gears every 1-2 gear change. I thought it'd get better in time. Obviously should have lemoned the car. Now I know my lesson. Drive a 2018 car but cannot get A/C because it will cost 2000 dollars and it won't even be good in 3 years most likely. They're not acknowledging the problem with their AC system so why would they change any part of that system? The evaporator will be replaced with another evaporator that will go out in 3 years of normal use."[40] (Posted on December 2, 2020)

"I've been into the dealership three times in the last 12 or so months with no a/c. I have a 2016 Civic, with 110k km (65k miles). I was told today that the evaporator is the culprit, needs replacing, and as its not part of the 10yr warranty extension, it'll be nearly $1500 after tax - $900 for the evap unit, and another $525 for an a/c recharge. Then I was told the part is on back order for 4 weeks. Not happy."[41] (Posted June 29, 2020).

"Hi! My 2016 Civic A/C went out last year due to a leak in the compressor. My A/C went out again just short of a year later and now I am told that there is a leak in the condenser (which is covered under the new 10 yr warranty), and also a leak in the evaporator (no longer under warranty). I know that there are many issues with the compressor and condenser, but has any one had issues with the evaporator? I am wondering if the other two issues caused the evaporator to leak. My car is just out of warranty so of course Honda is currently not willing to

[40] 2016-2019 Evaporator failures/leaks | Page 2 | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).
[41] https://www.civicx.com/forum/threads/2016-a-c-compressor-leak.24603/page-5 (last visited April 21, 2021).

cover the problem. I am not looking forward to my A/C going out annually."[42] (Posted March 3, 2020).

"I cannot give this car with 5 rating due to a design defect that Honda has not acknowledged the problem. I learned that it has been problems for many owners. I had this car for more than 2 years now. When the car reached near 40,000 miles, its air conditioning exhibited problem with no cold air on a hot day. The replacement of the air compressor was costly with labor $$$, but please do not pay this repair. It is a problem with Honda design. If you have a car with this problem and it is still under warranty, please bring it in the Honda Service Department for repair right away. Honda needs to recall its cars with this air conditioner defect. With this issue, I gave the car a 3 rating. Its performance is good and it is reliable so far."[43] (Posted on February 1, 2020).

"Just got my 17' Hatch last year, love everything about it but the AC started blowing hot air as well. My evaporator is leaking and the dealership wanted $2,000+ for repairs. Here's hoping Honda listens and announces a fix for all of us. I would love to have AC in SoCal."[44] (Posted on September 23, 2019).

"For the first year, the A/C was fine. Not really any cooler or warmer than other cars, but it's always taken a decent amount of time to cool the car off. It gradually took longer and longer to cool the car down, until the second summer of ownership, where the car would barely cool down, if at all. At the time, I had a short commute, and I don't typically use A/C on short trips, so it wasn't a huge priority for me. Took it to the dealership March 2018 and they diagnosed it as requiring a recharge. I was still under warranty at the time. About a year later, same thing. Take it to the dealership, this time it's diagnosed as a failed

---

[42] https://www.civicx.com/forum/threads/2016-a-c-compressor-leak.24603/page-3 (last visited April 21, 2021).
[43] *Id.*
[44] 2016-2019 Evaporator failures/leaks | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).

compressor. $1,214. I'm lucky, since my dealership was able to work with Honda corporate, since it was initially diagnosed as an issue under warranty … so I'll only have to pay a $250 deductible for the repair. Still, not happy about the low failure mileage."[45] (Posted on April 15, 2019).

"The A/C of the car stopped working at just over 45,000 miles. Because it was winter and it is past the 36,000 mile warranty, we postponed having the car checked and repaired. Today, at just over 51,000 miles, Lucas Auto Center of Van Nuys, California, diagnosed it and found that the compressor and condenser of the car leak and the A/C is empty of refrigerant. The compressor and condenser need to be replaced! The total estimated cost of the repair is $1,704.83, which we don't have. I plan to picket the Honda dealership where I bought the car to discourage people from buying a car that fails in a big way before 50,000!"[46] (Posted on November 1, 2018).

"So I started to notice my AC was blowing warm air. I soon took it into a dealership and they ran a diagnosis on it and then soon found that a rock went through my condenser. It will not be covered with warranty since it wasn't caused by the manufacturer defect. So I had to spend $700 to replace the condenser and a Freon and labor. Everything was fine but about I drove about 32,000 miles it started to happen again. I took it once again to the dealership and said there might be a small or big leak. Since I already drove it 12,000 miles my warranty was ended after I drove it at over 105,000 (current miles). So they gave an option to clean all the systems AC line without any computer diagnosed, so they added a new Freon, and a tracer capsule into the compressor system line to keep everything 'lubricated' inside the compressor. Then, they also added dye into the AC lines for it to

---

[45] 2016 A/C Compressor Leak | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).
[46] https://www.carcomplaints.com/Honda/Civic/2016/AC_heater/AC_not_working_properly.shtml (last visited April 21, 2021).

determine where the leak is coming from. This was very hard to tell because I have to drive it close to 12,000 miles if the same problem occurs again I have to run the same diagnosis again in order for them to determine where the leak is at."[47] (Posted on October 1, 2018).

"A/C was not cooling on the driver's side. Noticed leak on compressor and lines after the compressor was replaced under warranty. Dealer confirmed leak on low pressure line. Honda advised it would not be covered outside of the warranty period. Paying out of pocket to fix the line and recharge the system. Arbitration is being filed against Honda as the repair was not competed properly under warranty."[48] (Posted on September 26, 2018).

"Got an update from the service manager. Dropped my Honda off June 26 for the AC and still have not had it back yet. They already replaced the condenser and the evaporator and are going to replace the compressor next. They said it doesn't come in until mid August 8. Kind of wishing I didn't by this car now."[49] (Posted August 2, 2016).

"We just purchased a 2016 Civic Sedan Touring. We only have a few hundred miles on it. Our issue is this, the a/c works great while moving, once you sit for about 4 or 5 min it starts blowing like outside air temperature air, not cold a/c air anymore. No Econ button on either. U can shut system off and then turn back on and it blows cold air again for a few minutes then stops. I tried it on auto and recirculation and normal and it does it no matter. Am I missing something here? We noticed it yesterday while it sitting in a drive through a bit and while sitting outside a friend's house waiting for them today. While moving it'll freeze u out."[50] (Posted on June 12, 2016).

---

[47] https://www.carcomplaints.com/Honda/Civic/2016/AC_heater/AC_not_working_properly.shtml (last visited April 13, 2021).

[48] Id.

[49] A/C help | Page 5 | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited April 21, 2021).

[50] https://www.civicx.com/threads/a-c-help.4129/ (last visited April 13, 2021).

1
2
3
4
5
6
7
8
9

> "I have had to bring my Civic Touring model in three times for the AC. The first time I brought it in was to install the interior lighting kit and they noticed it wasn't blowing cold and fixed it. I brought it in because it blew hot air one day and they said there was a leak and replaced something. About a week later it blew hot air again and I dropped my car off on June 28 and they couldn't figure it out. They replaced the evaporator and the compressor and still broken. They called an engineer and he couldn't figure it out either. They told me they were going to replace the entire AC unit. Tomorrow will be three weeks my car has been in the shop."[51] (Posted on March 8, 2016)

10
11
12
13
14

199.   As this small sampling of complaints from vehicle owner forums shows, consumers have been vocal in complaining about the AC System Defect and the AC failure it causes. A multi-billion dollar automaker like Honda undoubtedly had and has a marketing department that tracks such sites and should reasonably have been aware of the AC System Defect in the Class Vehicles.

15
16
17
18

200.   Indeed, as demonstrated by the posting below, Honda routinely monitors third-party websites on which its customers discuss defects affecting their Honda vehicles – including the Defect – and responds to its customers:

19
20
21
22
23
24
25
26

> "Bought brand new Civic EX-T 1.5 back in the beginning of June. Had no issues up until July when an apparent cable going to the TCM had some bent pins in it causing a failure to have engine turnover as well as every indicator come flashing up from parking brake failure to engine emissions failure. Had it towed on a Sunday, they fixed the bent pins and reconnected to the TCM, all was fixed and went on my way. Fast forward to 3/5/17. Same issue happened again, no engine turnover and a slew of errant indicators across screens. Had it towed again. This time they said it's an issue with the TCM unit itself and have

27
28

[51] A/C help | Page 2 | 2016+ Honda Civic Forum (10th Gen) - Type R Forum, Si Forum - CivicX.com (last visited 4/20/2021)

order a new one. Part will be here in the next day or so and fixed within an hour."[52]

An official Honda representative from Honda Customer Service responded to the post on March 6, 2017.



### 7. Honda Acknowledged the Defect in a TSB

201.   A July 2016 Technical Service Bulletin ("TSB") demonstrates that Honda has known of the Defect since before it placed Class Vehicles into the stream of commerce.

202.   In TSB No. ATS 160709, Honda advised its authorized dealers and service technicians of the AC System's propensity to crack and leak refrigerant.[53] Specifically, it acknowledged that Honda had been "getting reports of the A/C not blowing cold air[,]" and that "service techs are noticing there's refrigerant oil on the

---

[52] https://www.civicx.com/threads/civic-ex-t-transmission-control-module-tcm.9487/#post-157956 (last visited April 21, 2021).

[53] https://static.nhtsa.gov/odi/tsbs/2016/MC-10084408-2280.pdf (last visited April 13, 2021).

radiator fan shroud and surrounding areas, indicating a leak[,]" although it nevertheless failed to immediately take affirmative steps to make actual and prospective Class Vehicle owners and lessees aware of the Defect, or to attempt early remediation of the Defect, thereby ensuring that tens of thousands of Class Vehicles would manifest the Defect, and that owners of Class Vehicles would incur millions of dollars in often-futile repair costs.

203.    The timing of that TSB is critical, because TSBs are issued after automobile manufacturers open an investigation into a potential defect, compile their findings, draft a proposed remedy for internal review and then ultimately issue a finalized TSB to dealers. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (observing TSBS are preceded by "an accretion of knowledge by [the manufacturer]." Courts have held that 16 months is a reasonable time period for a manufacturer to investigate and issue a TSB in response to a defect. *Butler v. Porsche Cars N. Am., Inc.*, No. 16-CV-02042-LHK, 2016 WL 4474630, at *5 (N.D. Cal. Aug. 25, 2016) ("The TSB's relevance to the issue of GM's knowledge is even more compelling in the instant case, where only *eight months* elapsed between the date of sale of Plaintiff's car and the release date of the TSB, compared to *Philips*, which had a gap of 16 months between the date of sale and the date of the TSB. It is reasonable to infer that, in order for Defendants to release the TSB addressing the defect only eight months after the date of sale, Defendants had knowledge of the defect by at least May 2007.").

204.    Honda nevertheless chose to conceal from Class Members that the components within the AC System are defective and eventually will require costly repairs, and that the Defect reduced the value of the vehicle at the time of sale and/or will reduce the resale value of Class Vehicles.

205.    In sum, as early as 2015, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, Honda was aware of the AC System Defect, should have been aware of the AC System Defect through the

exercise of reasonable care, and/or was negligent in failing to be aware of the AC System Defect, based on, among others, the following sources:

    a. Pre-release design, manufacturing, engineering, and testing data;

    b. Detailed data gathered by Honda about large number of AC System Defect repairs;

    c. Knowledge Honda had of the large number of replacement AC System parts ordered from Honda;

    d. Numerous and consistent consumer complaints made directly to Honda about the AC System Defect;

    e. Numerous and consistent consumer complaints collected by NHTSA ODI about the AC System Defect;

    f. Numerous and consistent consumer complaints made on online vehicle owner forums;

    g. Honda service center employees' familiarity with and knowledge of the AC System Defect; and

    h. Service bulletins sent by Honda to its dealerships evincing knowledge of ongoing issues with AC Systems in the Class Vehicles;

206. Moreover, the large number and consistency of Class member complaints describing the AC System's propensity to crack, leak refrigerant, lose pressure, and fail to function underscores the fact that Class Members considered the AC System Defect to be a material safety issue to the reasonable consumer.

## 8. **Honda's Marketing and Concealment of the Defect**

207. Upon information and belief, Honda knowingly marketed and sold/leased the Class Vehicles with the AC System Defect, while willfully

concealing the true inferior quality and sub-standard performance of the Class Vehicle's AC Systems.

208.    Honda generally markets the Class Vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other- mass media.

209.    Both AHM and HNA have their principal place of business in Torrance, California.   Upon information and belief, the principal place of business for both AHM and HNA is the location where the decisions regarding marketing, advertising, product development, and the alleged misconduct occurred.

210.    Honda's marketing campaigns typically focus on the safety and reliability of Class Vehicles. For example, upon debuting both the 2016 and 2017 Civic, Honda issued press releases touting the Vehicles' safety features and performance.[54] Honda's advertisements build upon these themes, and often reference the Civic as a "top safety pick."[55]

211.    Honda also touted Class Vehicles as "a new benchmark in the compact class in terms of spaciousness, fuel efficiency, safety features, interior quality and dynamic performance", and as delivering "premium comfort" through a "[d]ual-zone automatic climate control" system.[56]

212.    In practice, Class Vehicles are not as comfortable or reliable as Honda's marketing suggests. Honda concealed the fact that the Class Vehicles are not comfortable or enjoyable under ordinary conditions because the AC Systems

---

[54] https://hondanews.com/releases/2016-honda-civic-sedan-press-kit-overview?query=high+strength+steel (last visited April 21, 2021).
 https://hondanews.com/releases/2017-honda-civic-hatchback-press-kit-overview   (last visited April 21, 2021).
[55] https://hondanews.com/honda-automobiles/releases/all-new-2016-honda-civic-coupe-earns-iihs-top-safety-pick-rating (last visited April 21, 2021).
[56] https://hondanews.com/releases/2016-honda-civic-sedan-press-kit-overview?query=high+strength+steel (last visited April 21, 2021).

repeatedly and consistently leak refrigerant, lose pressure, and fail to provide cool air into the passenger cabin.

213.    Plaintiffs and Class Members were exposed to Honda's long-term, national, multimedia marketing campaign touting the supposed quality, safety, and comfort of the Class Vehicles, and Class Members justifiably made their decisions to purchase or lease their Class Vehicles based on Honda's misleading marketing that concealed the true, defective nature of the Class Vehicles.

214.    Further, Honda knowingly misled Class Members about the true, defective nature of the Class Vehicles. As detailed above, upon information and belief, Honda has been aware of the AC System Defect since at least 2015, and certainly well before Plaintiffs and Class Members purchased or leased their Class Vehicles, through pre-release evaluation and testing; investigations that resulted in TSBs; the high number of AC System repairs and replacement part sales; and the numerous and consistent complaints about the AC System Defect made directly to Honda, collected by NHTSA, and posted on public online forums.

215.    In sum, Honda has actively concealed the existence and nature of the AC System Defect from Class Members since at least 2015 despite its knowledge of the existence and pervasiveness of the AC System Defect. Specifically, Honda has:

a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the AC System Defect;

b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' AC Systems were defective and not fit for their intended purposes;

c.    Failed to disclose, and actively concealed, the fact that the Class Vehicles' AC Systems were defective, despite that Honda learned of the AC System Defect as early as 2015, and certainly well before

Plaintiffs and Class Members purchased or leased their Class Vehicles.

d. Failed to disclose, and actively concealed, the existence and pervasiveness of the AC System Defect even when directly asked about it by Class Members during communications with Honda, Honda Customer Care, Honda dealerships, and Honda service centers;

e. Actively concealed the AC System Defect by forcing Class Members to bear the cost of temporary "fixes" while at the same time performing those "fixes" at no (or lower) cost for those who complained and often, and calling these "goodwill" services; and

f. Actively concealed the AC System Defect by consistently treating the AC System failures with temporary "fixes," so that the AC System Defect is not effectively corrected in Class Members' vehicles, even though Class Members were led to believe that the "fixes" had cured the AC System Defect in their Vehicles.

216.   By engaging in the conduct described above, Honda has concealed, and continues to conceal, the AC System Defect from Class Members. If Class Members had had knowledge of the information Honda concealed, they would not have purchased or leased the Class Vehicles or would have paid less to do so.

217.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for disseminating false and misleading marketing materials regarding the Class Vehicles. Honda necessarily is in possession of all of this information. Plaintiff's claims arise out of Honda's fraudulent concealment of the AC System Defect, and its representations about the quality, safety, and comfort of the Class Vehicles. To the extent that Plaintiffs' claims arise from Honda's

fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they purchased or leased their Class Vehicles, Honda knew, or was reckless in not knowing, of the AC System Defect; Honda was under a duty to disclose the Defect based upon its exclusive knowledge of it, and its concealment of it; and Honda never disclosed the Defect to Plaintiffs or the public at any time or place or in any manner.

218.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Honda:

a. **Who**: Honda actively concealed the AC System Defect from Plaintiffs and Class Members while simultaneously touting the safety, comfort, sophistication, and quality of the Class Vehicles, as alleged in the preceding paragraphs. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Honda responsible for such decisions.

b. **What**: Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the AC System Defect, as alleged in the preceding paragraphs. Honda concealed the Defect and made representations about the safety, comfort, sophistication, world-class quality, and other attributes of the Class Vehicles, as specified above in the preceding paragraphs.

c. **When**: Honda concealed material information regarding the Defect at all times and made representations about the quality, safety, and comfort of the Class Vehicles, starting no later than 2015, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day, as alleged above in the preceding

paragraphs. Honda still has not disclosed the truth about the Defect in the Class Vehicles to anyone outside of Honda. Honda has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their Vehicles to Honda complaining of AC System failures, Honda denied any knowledge of or responsibility for the AC System Defect.

d. **Where**: Honda concealed material information regarding the true nature of the Defect in every communication it had with Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Honda disclosed the truth about the Defect in the Class Vehicles to anyone outside of Honda. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's website.

e. **How**: Honda concealed the AC System Defect from Plaintiffs and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Honda actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Honda promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why**: Honda actively concealed material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made

representations about the quality, safety, and comfort of the Class Vehicles. Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class Members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would have paid less for them.

### 9. Honda's Warranty Extension Program

219.   Due to the pervasive nature of the Defect, on August 9, 2019, Honda informed its dealers through TSB No. 19-091 that it would extend warranty coverage for AC System failures in Class Vehicles for up to ten (10) years and unlimited mileages (the "Program").

220.   Although Honda's Program purportedly provides some relief to a subset of Class Members, it does not provide the full relief to which the Class is entitled.

221.   *First*, the Program does not cover all Class Vehicles. Although Honda equips all Civic vehicles, including "hatchback" vehicles, with identical AC Systems, Honda excluded hatchbacks from the program.[57] Based on Honda's own estimates of hatchback sales,[58] the Program likely excludes approximately 200,000 Class Vehicles.

222.   *Second*, the Program does not cover all repairs the Defect necessitates. The Program covers only replacement of AC System condensers that failed due to an alleged manufacturing defect that Honda claims causes condensers to develop pinhole leaks due to corrosion. The Program does not cover repairs to other AC System components such as hoses, compressors, evaporators or condensers that failed but did not evidence corrosion.

---

[57]    https://www.civicx.com/forum/threads/ac-condenser-tsb-19-091-the-case-for-including-hatches.43204/ (last visited April 21, 2021).
[58] https://www.wardsauto.com/industry/honda-calling-50000-civic-hatch-sales (last visited April 21, 2021).

223.   The Program's parameters thus are unduly narrow. For example, although a condenser may begin to corrode, it may fail to display visible symptoms yet suffer from a weakened metal surface more susceptible to punctures from road debris. The Defect also often manifests in components other than the condenser, such as the compressor and evaporator, but repairs thereto are ineligible for Program coverage.

224.   *Third*, merely replacing the condenser does not cure the systemic defect plaguing Class Vehicle AC Systems. One need look no further than the experiences of Plaintiffs Heier, Fairchild, and Yin: Honda replaced each of their condensers at no charge, only for the Defect to manifest in a different component (the compressor for all) months later. Absent class members likewise report AC System failures following condenser replacement. The Program thus does not provide the complete "fix" to which Class members are entitled.

225.   *Fourth*, Class Members report that Honda continues to repair failed AC Systems using equally defective replacement parts. Because the AC System Defect can manifest years after authorized dealers effect repairs, many Class Members may experience additional AC System failures more than ten years after purchase. As such, the Program fails to provide Class Members that for which they bargained: Class Vehicles equipped with AC Systems that Class Members reasonably expected would function through the end of the vehicles' useful life.

226.   *Fifth*, the Program is unlikely to provide relief to former owners and lessees who divested themselves of their Class Vehicles before Honda publicly announced the warranty extension. The plain language of the owner notification letter Honda disseminated in November 2019 indicates Honda notified only then-current owners and lessees of their purported right to seek reimbursement for expenses incurred in replacing condensers that failed due to corrosion. *See* November 2019 letter to Honda owners, attached as **<u>Exhibit C</u>**. If Honda failed to

notify former owners and lessees, those members of the putative Class are unlikely to secure reimbursement for even the limited subset of repairs the Program covers.

227.   *Sixth*, the Program will not compensate Class Members for either the diminution in value of their Vehicles, or the amount by which they overpaid for vehicles that suffer from a known, safety-related Defect.

228.   In short, Honda's Program fails to provide relief to many (if not most) Plaintiffs and Class Members.

**10.  The *Elkins* Litigation**

229.   This is not the first time Plaintiffs Munoz, Hu, and Fairchild bring claims in connection with the AC Defect.

230.   In May 2019—and then subsequently September 2019 for the amended complaint—Plaintiffs Munoz, Hu, Fairchild, and several others not party to this action, commenced in this District in an action styled *Elkins et al. v. American Honda Motor Co. et al.,* No. 19-cv-008180-JLS-KES ("*Elkins*"). *Elkins* was assigned to the Honorable Josephine L. Staton.

231.   After Honda made known its intention to implement the Program, the *Elkins* plaintiffs filed an amended complaint addressing the Program's limitations, particularly insofar as the Program only provides warranty coverage for condensers that failed due to corrosion, while shifting onto Plaintiffs and the Class the cost of the other repairs the Defect necessitates.

232.   On October 18, 2019, Honda moved to dismiss the amended complaint for lack of standing and failure to state a claim. *See Elkins*, ECF No. 40. On January 17, 2020, Judge Staton held oral argument, at which time she "address[ed] the threshold issue of standing." *Id.* at ECF No. 57.

233.   On July 20, 2020, Judge Staton issued a memorandum opinion and order granting Honda's Motion to Dismiss, entirely based on Honda's claim the Program offered plaintiffs relief. *See Elkins*, ECF No. 60 (the "Order"). Specifically, Judge Staton held the *Elkins* plaintiffs' claims were not ripe because they: (1) had

yet to submit claims for reimbursement for prior repairs through the extension program—including for repairs to components like the compressor, which the TSB announcing the program expressly excluded from coverage; or (2) report that their AC Systems failed following in-warranty repairs and that Honda to refused to cover the costs of those subsequent repairs—including replacement of components other than the condenser—pursuant to its New Vehicle Limited Warranty or the newly announced Program. See generally Order at 6-10.

234.   In her Order, Judge Staton advised that "[o]nce Plaintiffs have availed themselves-or attempted to avail themselves-of Honda's warranty extension program, including its reimbursement aspect, a court will be better positioned to rule on the efficacy and legal sufficiency of Honda's warranties, as well as whether Honda breached any of its warranties, if such a ruling becomes necessary." *Id*. at 9. Judge Staton entered the Order without prejudice, but also denied Plaintiffs leave to amend. *Id*. at 10.

235.   After the parties appeared for argument on January 17, 2020, but before Judge Staton ruled on Honda's motion, several newly discovered facts came to light.

236.   First, then-Plaintiffs David and Laura Elkins—former owners of a Class Vehicle that experienced an AC System failure due to a leak in the condenser—reported that Honda did not provide them notice of the Program. Although Honda issued TSB 19-091 in August 2019, the exemplar customer letter it appended to the motion to dismiss filed in *Elkins* expressly states it did not intend to disclose the Program to Class Vehicle owners until November 2019. ECF No. 40-2, 1. Further, the exemplar letter's plain language indicated that Honda intended to mail the letter only to current owners and lessees of Class Vehicles despite the fact that former owners purportedly also are eligible for relief. *Id.* As a result, former owners are unlikely to learn they are eligible for reimbursement, significantly undermining its effectiveness—as well as its cost to Honda.

237.    Second, several of the *Elkins* plaintiffs had occasion to (1) seek reimbursement for AC System repairs—including to components other than the condenser—through the Program, or (2) following subsequent AC System failures, tender their vehicles to authorized Honda dealers for free, Program-eligible repairs. See ECF No. 40-2, Ex. 2 ("If the vehicle's A/C does not blow cold air, go to any authorized Honda dealer to have the vehicle inspected. If the A/C condenser is leaking because it was not manufactured to specification, it will be replaced. This work will be done for free."). The experiences of these plaintiffs—some of which are now also parties to this action—confirmed the Program's inherent limitations and that Plaintiffs' claims are ripe for adjudication.

238.    Third, the *Elkins* plaintiffs were able to confirm that Honda's Program will not reimburse vehicle owners for *non-condenser* repairs. For example, Plaintiffs Munoz and Hu—parties to both this action and *Elkins*—sought reimbursement or warranty coverage for compressor repairs after the Honda implemented the Program only for Honda to inform them the Program only covers condenser repairs.

239.    Prior to bringing suit in *Elkins*, Plaintiff Munoz's AC System suffered a compressor failure. Following the Order, he contacted Honda to request reimbursement through the program for expenses incurred in replacing his failed compressor. But on August 13, 2020, American Honda advised Plaintiff Munoz that compressor repairs were not eligible for reimbursement under the Program.

240.    Plaintiff Hu contacted Honda on several occasions following the Court's July 20, 2020 Order seeking reimbursement through the Program for his prior compressor failure. Auto Nation Honda in Fremont, California, finally informed him that that because TSB19-091 only covers condensers, compressor repairs are ineligible for the Program, and Honda would not reimburse him for his prior compressor repair.

241.   In short, Munoz and Hu's experiences confirm the Program does not provide complete relief to Plaintiffs and Class members who previously paid to replace non-condenser AC System components, just as the *Elkins* plaintiffs alleged.

242.   As alleged *supra*, Honda originally "repaired" Plaintiff Fairchild's AC System under warranty in July 2020. Her AC System failed again shortly thereafter, so Plaintiff proceeded as instructed in the owner notification letter she received: she arranged to bring her vehicle to an authorized Honda dealer for inspection and, hopefully, free repairs. An authorized Honda technician determined that both her condenser *and* compressor had fractured and required replacement. The condenser was replaced at no cost pursuant to the warranty Program, but the Program only covered repair and/or replacement of certain "defective" condensers, and therefore she had to pay approximately $1,400 out-of-pocket to replace her compressor.

243.   Plaintiff Fairchild's experiences thereby confirmed the Program does not cover repairs to AC System components beyond the condenser.

244.   In light of these developments and discoveries, Plaintiffs filed a motion for reconsideration shortly after Judge Staton issued her June 20 Order. *See Elkins*, ECF 62. Judge Staton ultimately denied that motion on grounds unrelated to the merits, but noted in her resulting order that the plaintiffs did not demonstrate "they would suffer 'manifest injustice' by having to refile this matter as a new lawsuit." *Elkins*, ECF 65, 2.  Accordingly, several of the *Elkins* plaintiffs—Plaintiffs Munoz Hu, and Fairchild—filed this new lawsuit, in which they are joined by several Plaintiffs who were not parties to *Elkins*.

## CLASS ACTION ALLEGATIONS

245.   Pursuant to Rules 23(b)(2), 23(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs will seek certification of a nationwide class preliminarily defined as follows:

> **All persons who purchased or leased a 2016 to 2019 Honda Civic in the United States (the "National Class").**

246.  Plaintiffs Amado Munoz, Carolyn Heier, and Ben Hu also seek certification of a California Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in California (the "California Class").**

247.  Plaintiff Gary Tetrault also seeks certification of a Connecticut Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Connecticut (the "Connecticut Class").**

248.  Plaintiff Robinson also seeks certification of a Florida Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Florida (the "Florida Class").**

249.  Plaintiff Schwartz also seeks certification of an Oregon Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Oregon (the "Oregon Class").**

250.  Plaintiff Frank Costobile also seeks certification of a Pennsylvania Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Pennsylvania (the "Pennsylvania Class").**

251.  Plaintiffs Rachel Fairchild and James Tillery also seek certification of a Virginia Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Virginia (the "Virginia Class").**

252.  Plaintiff Yin also seeks certification of a Washington Subclass defined as follows:

**All persons who purchased or leased a 2016 to 2019 Honda Civic in Washington (the "Washington Class").**

253.    The National Class and State Subclass definitions specifically exclude:
(a) all persons who have had their Class Vehicle re-purchased or "bought back" by
Honda (whether the buy-back was required by law or was solely by agreement), or
who previously signed a release of the defect claims alleged in this Complaint; (b)
Defendants and any of their current officers or executives; (c) any person, firm,
trust, corporation, or other entity who purchased a Class Vehicle solely for resale;
and (d) any Judge presiding over this action.

254.    The scope of this class action neither seeks to include nor extinguish
any personal injury, death, or property damage claims arising from or relating to
the AC System Defect regarding any Class Vehicle.

255.    The proposed classes meet the requirements of Federal Rule of Civil
Procedure 23(a) and 23 (b)(2), (b)(3) and/or (c)(4).

256.    *Numerosity and Ascertainability*: The National Class and State
Subclasses are comprised of tens of thousands of Class Vehicle owners throughout
the United States, making joinder impractical. Moreover, the Class and Subclass
are composed of an easily ascertainable, readily identifiable set of individuals and
entities who purchased Class Vehicles. The members of the National Class and
State Subclasses are so numerous that joinder of all members is impracticable. The
precise number of National Class and State Subclass Members can be ascertained
only through discovery, which includes Honda's network sales, service, and
complaint records. The disposition of their claims through a class action will benefit
both the parties and this Court. Furthermore, members of the National Class and
State Subclasses may be identified from records maintained by Honda and its
agents, and may be notified of the pendency of this action by mail, or other
appropriate means, using a form of notice customarily used in consumer class
actions.

257.    *Commonality*: The critical questions of law and fact common to the
National Class and State Subclasses that will materially advance the litigation

include, but are not limited to, the following:

a.   Whether Honda engaged in the conduct alleged herein;

b.   Whether the Class Vehicles contain a safety defect;

c.   Whether Honda knew about the AC System and, if so, how long Honda
has known of it;

d.   Whether Honda defectively designed or manufactured the Class
Vehicles;

e.   Whether Plaintiffs and Class Members were exposed to the same
omissions of fact or misleading advertising regarding the AC System
Defect;

f.   Whether Honda's conduct violates consumer protection statutes, false
advertising laws, sales contracts, warranty laws, and other laws alleged
herein;

g.   Whether Plaintiffs and Class Members overpaid for their Class
Vehicles;

h.   Whether Plaintiffs and Class Members are entitled to equitable relief,
including, but not limited to, restitution or injunctive relief, and

i.   Whether Plaintiffs and Class Members are entitled to damages and
other monetary relief and, if so, in what amount.

258.   *Typicality*: Plaintiffs' claims are typical of the claims of the members
of the National Class and State Subclasses, as all such claims arise out of Honda's
conduct in designing, manufacturing, warranting, and selling the Class Vehicles
with the AC System Defect.

259.   *Adequate Representation*: Plaintiffs will fairly and adequately protect
the interests of Class Members and have no interests antagonistic to those of the
Class. Plaintiffs have retained counsel experienced in the prosecution of complex
class actions including, but not limited to, consumer class actions involving, *inter
alia*, breach of warranties, product liability, and product design defects.

260.   *Predominance*: This class action is appropriate for certification because questions of law and fact common to National Class and State Subclasses predominate over questions affecting only individual members.

261.   *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring individual National Class and State Subclass Members to bring separate actions would create a multiplicity of lawsuits burdening the court system and the risks of inconsistent rulings and of contradictory judgments. Alternatively, the diminution in value attributable to the defect may not be sufficient to economically justify individual litigation of these claims. Because the damages suffered by each National Class and State Subclass Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the only way each National Class and State Subclass Member can redress the harm that Honda caused.

262.   This lawsuit is also maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the National Class and State Subclasses, thereby making final injunctive relief appropriate.

263.   This lawsuit is also maintainable as a class action under Federal Rule of Civil Procedure 23(c)(4) because Defendants have acted or refused to act on grounds that are generally applicable to the National Class and State Subclasses, thereby making certification appropriate for particular issues.

## **TOLLING OF STATUTES OF LIMITATIONS**

264.   *Discovery Rule*. Plaintiffs' claims accrued upon discovery that the air conditioning system that Honda designed, manufactured, and installed into the Class Vehicles suffered from the AC System Defect, and that the AC System Defect could not be repaired. While Honda knew of and omitted to disclose the AC System Defect, Plaintiffs, Class Members, and Subclass Members could not and did not

discover this fact through reasonable diligent investigation until after they experienced air conditioning failures, and reasonably excluded other potential causes of the failures.

265.    *Active Concealment Tolling*. Any statutes of limitations are tolled by Honda's knowing and active concealment of the AC System Defect. Honda kept Plaintiffs and all Class and Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and Subclass Members. Plaintiffs and Class Members could not reasonably have discovered the AC System Defect.

266.    *Estoppel*. Honda was and is under a continuous duty to disclose to Plaintiffs, as well as Class and Subclass Members, the true character, quality, and nature of the Class Vehicles' air conditioning system. At all relevant times, and continuing to this day, Honda knowingly, affirmatively, and actively misrepresents and omits the true character, quality, and nature of the Class Vehicles' air conditioners, including the AC System Defect. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class and Subclass Members. Plaintiffs and Class and Subclass Members reasonably relied upon Honda's knowing and/or active omissions. Based on the foregoing, Honda is estopped from relying upon any statutes of limitation in defense of this action.

267.    *Equitable Tolling*. Honda took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles with the AC System Defect. The details of Honda's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs, Class and Subclass Members. When Plaintiffs learned about this material information, they

exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Honda wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the residents of the United States and its Territories)**

268.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

269.   Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the State Subclasses against Honda.

270.   Each Plaintiff brings her own claims under the laws of their home States as codified below:

        a.  Cal. Com. Code § 2313, *et seq*.;

        b.  Conn. Gen. Stat. § 42a-2-313, *et seq*.;

        c.  Fla. Code § 672.313, *et seq*.;

        d.  Or. Rev. Stat. § 72.3130, *et seq*.;

        e.  13 Pa. Cons. Stat. § 2313, *et seq*.;

        f.  Va. Code § 8.2-313, *et seq*.; and

        g.  Wash. Rev. Code § 62A.2-313, *et seq*.;

271.   Plaintiffs also bring claims on behalf of the Class under the laws of the following States as codified below:

        a.  Ala. Code § 7-2-313, *et seq*.;

        b.  Alaska Stat. § 45.02.313, *et seq*.;

        c.  Ariz. Rev. Stat. § 47-2313, *et seq*.;

        d.  Ark. Code § 4-2-313, *et seq*.;

        e.  Colo. Rev. Stat. § 4-2-313, *et seq*.;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

f.  6 Del. C. § 2-313, *et seq*.;

g.  D.C. Code § 28:2-313, *et seq*.;

h.  O.C.G.A. § 11-2-313, *et seq*.;

i.  Haw. Rev. Stat. § 490:2-313, *et seq*.;

j.  Idaho Code § 28-2-313, *et seq*.;

k.  810 Ill. Comp. Stat. 5/2-313, *et seq*.;

l.  Ind. Code § 26-1-2-313, *et seq*.;

m. Iowa Code § 554.2313, *et seq*.;

n.  Kan. Stat. § 84-2-313, *et seq*.;

o.  Ky. Rev. Stat. § 355.2-313, *et seq*.;

p.  La. Rev. Stat § 9:2800.53(6) , *et seq*.;

q.  11 M.R.S.A. § 2-313, *et seq*.;

r.  Mass. Code 106, § 2-313, *et seq*.;

s.  Md. Code Ann., Com. Law § 2-313, *et seq*.;

t.  Mich. Comp. Laws 440.2313, *et seq*.;

u.  Minn. Stat. § 336.2-313, *et seq*.;

v.  Miss. Code § 75-2-313, *et seq*.;

w.  Mo. Rev. Stat. § 400.2-313, *et seq*.;

x.  Mont. Code § 30-2-313, *et seq*.;

y.  Neb. U.C.C. § 2-313, *et seq*.;

z.  Nev. Rev. Stat. § 104.2313, *et seq*.;

aa. N.H. Rev. Stat. § 382-A:2-313, *et seq*.;

bb. N.J. Stat. § 12A:2-313, *et seq*.;

cc. N.M. Stat. § 55-2-313, *et seq*.;

dd. N.Y. U.C.C. § 2-313, *et seq*.;

ee. N.C. Gen. Stat. § 25-2-313, *et seq*.;

ff. N.D. Cent. Code § 41-02-30, *et seq*.;

gg. Ohio Rev. Code § 1302.26, *et seq*.;

hh. Okla. Stat. Tit. 12A, § 2-313, *et seq.*;

ii.  R.I. Gen. Laws § 6A-2-313, *et seq.*;

jj.  S.C. Code § 36-2-313, *et seq.*;

kk. S.D. Codified Laws § 57A-2-313, *et seq.*;

ll.  Tenn. Code § 47-2-313, *et seq.*;

mm.  V.T.C.A., Bus. & C. § 2.313, *et seq.*;

nn. Utah Code § 70A-2-313, *et seq.*;

oo. Vt. Stat. Tit. 9A, § 2-313, *et seq.*;

pp. W. Va. Code § 46-2-313, *et seq.*;

qq. Wis. Stat. § 402.313, *et seq.*; and

rr.  Wyo. Stat. § 34.1-2-313, *et seq.*

272.  Honda expressly warranted that it would cover the cost of all parts and labor to repair any item on the vehicle when it left the manufacturing plant that is defective in material or workmanship.

273.  Further, Honda advertised the Class vehicles as "safe" and "pushing the boundaries of automotive engineering" while failing to disclose to Plaintiffs and Class Members any hint of the risks the AC System Defect poses, which renders Class Vehicles dangerous and unreliable. This omission was material to the Plaintiffs and Class Members.

274.  Honda materially breached its express warranties by selling and leasing Class Vehicles that suffer from the AC System Defect, which rendered the Class Vehicles unsafe or unfit for use as warranted. Thus, at the point of sale, the written warranties were breached by Honda as the Class Vehicles were unsafe and contained an inherent design defect.

275.  Honda breached the express warranty because it did not promptly replace, repair, or buy back the Class Vehicle of Plaintiffs and the other Class Members.

276.  Honda was put on notice of the breach by Class Member's online

complaints available on NHSTA and other online public websites, and by, *inter alia*, notification of the AC System Defect directly by its authorized dealerships and service centers as the July 2016 TSB demonstrates

277. Plaintiffs notified Honda of its breach within a reasonable time, and/or were not required to do so because affording Honda a reasonable opportunity to cure a breach of its written warranty would have been futile. Honda also knew of the Defect and yet chose to conceal it and refuse to comply with its warranty obligations.

278. In addition, Honda's express warranty has failed its essential purpose due to (1) the AC System Defect not being covered under either the Powertrain or Limited warranties that accompanied each Class Vehicle, (2) the months-long wait for replacement parts many Class Members have had to endure due to the Defect's pervasiveness, and (3) because Honda's in-warranty "fixes" have proven ineffective. Specifically, due to a defect in materials, workmanship and/or design, Class vehicle AC Systems are prone to fail during ordinary and foreseeable use and conditions, even when Honda replaces failed components with OEM replacement parts.

279. Plaintiffs have complied with the warranty terms. Honda, after notice of the problems, has failed to comply with the warranty terms.

280. Any attempt by Honda to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect also is procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the states listed in this Count. Honda knew or should have known about the Defect in the Class Vehicles prior to selling Class Vehicles while continuing to market Class Vehicles as safe and reliable, had unequal bargaining power and misrepresented the Class Vehicles' reliability, and limited remedies unreasonably favors Honda and fail Plaintiffs reasonable expectations for product performance.

281. As a result of Honda's breach of its express warranties, Plaintiffs and the other Class Members received goods in a sub-standard and unsafe condition that

substantially impairs their value to Plaintiffs and the other Class Members. Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Class Vehicles and the inability to safely use their Class Vehicles.

282.    Plaintiffs and Class Members are entitled to recover all damages as a result of said breach of warranties in an amount in excess of $5,000,000.00.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranties**
**(On behalf of the residents of the following States)**

283.    Plaintiffs bring their claims under the laws of their own States as codified below:

      a.  Cal. Com. Code §§ 2314-2315, et seq., and Cal. Civ. Code § 1790, *et seq.*;

      b.  Ore. Rev. Stat. §§ 72.3140, 72.3150 and 72.3180, *et seq.*; and

      c.  Wash. Rev. Code §§ 62A.2-314 and 62A.2-315, *et seq.*

284.    Plaintiffs also bring claims on behalf of the Class under the laws of the following States as codified below:

      a.  Ala. Code §§ 7-2-314, 7-2-315 and 7-2-318, *et seq.*;

      b.  Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2315 and 47-2318, *et seq.*;

      c.  Ga. Code Ann. §§ 11-2-314, 11-2-315 and 11-2-318, *et seq.*;

      d.  Idaho Code Ann. §§ 28:2-314, 28:2-315 and 28:2-318, *et seq.*;

      e.  810 Ill. Comp. Stat. 5/2-314, 5/2-315 and 5/2-318, *et seq.*;

      f.  Iowa Code §§ 554.2314, 554.2315 and 554.2318, *et seq.*;

      g.  Ky. Rev. Stat. Ann. §§ 355.2-314, 355.2-315 and 355.2-318, *et seq.*;

      h.  N.Y. U.C.C. Law §§ 2-314, 2-315 and 2-318, *et seq.*;

      i.  N.C. Gen. Stat. §§ 25-2-314, 25-2-315 and 25-2-318, *et seq.*;

      j.  Tenn. Code Ann. §§ 47-2-314, 47-2-315 and 47-2-318, *et seq.*; and

      k.  Wis. Stat. §§ 402.314, 402.315 and 402.318, *et seq.*

285.  Honda is a manufacturer and seller, as it designed, assembled, fabricated, produced, constructed, and prepared the Class Vehicles before they were sold. Honda is a seller because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale or use, with actual knowledge of the AC System Defect.

286.  Honda impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and Class Members, were merchantable, fit, and safe for their ordinary use, not otherwise injurious to consumers. Honda warranted that the Class Vehicles' primary components, including the air conditioning system, would operate properly.

287.  Honda did not effectively disclaim these implied warranties.

288.  The Class Vehicles sold by Honda were defective at the time of their sale. Honda breached its implied warranty of merchantability, in that, the Class Vehicles were not merchantable because they cannot be driven safely under all reasonably expected weather conditions and thus are not reliable for safe transportation. The Class Vehicles' AC System suffered from the Defect described herein, such that their environmental controls, including the system's ability to defog windshields, repeatedly failed to function properly, sometimes beginning early on in the vehicles' expected useful life.

289.  Honda, through its agent dealerships, sold Class Vehicles to Plaintiffs.

290.  Plaintiffs were each persons Honda reasonably might have expected to purchase and use a Class Vehicle.

291.  Plaintiffs relied upon Honda's implied warranties that the Class Vehicles they purchased were of merchantable quality and fit for their intended purposes. The AC System Defect rendered its AC Systems useless, caused their Class Vehicles to be unreasonably dangerous in certain weather conditions, and posed an unreasonable risk of damage to other expensive components of the Class Vehicles' AC System.

292.  Honda placed the Class Vehicles in the stream of commerce and expected them to reach consumers without substantial change in the condition in which they were sold. Indeed, Class Vehicles reached Plaintiffs—persons that would reasonably be expected to use, consume, or be affected by the performance of a Class Vehicle—without substantial change in the condition in which they were sold.

293.  The Class Vehicles are defective in materials, workmanship and/or design, as outlined throughout this Complaint. Despite knowledge of the AC System Defect, Honda failed to warn consumers about the defect before or after the sale of the Class Vehicles.

294.  In situations such as Plaintiffs'—where the driver used the Class Vehicle as intended and in a foreseeable and reasonable manner—the AC System should not fail.

295.  Nevertheless, Plaintiffs' Class Vehicles AC Systems did fail, and they did so because of the Defect that existed in the Class Vehicles at the time they left the manufacturer's control.

296.  Honda knew or should have known of the Defect in Class Vehicles and that, as a result, they were unfit for their intended and foreseeable purpose.

297.  Honda did not warn or alert purchasers or users of the foregoing Defect, despite its knowledge of it.

298.  As a direct and proximate result of the Defect in the Class Vehicles, Plaintiffs have sustained injuries, damages, and losses.

299.  Any attempt by Honda to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect also is procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the states listed in this Count. Honda knew or should have known about the Defect in the Class Vehicles prior to selling Class Vehicles while continuing to market Class Vehicles as safe and reliable, had unequal bargaining power and misrepresented the

Class Vehicles' reliability, and limited remedies unreasonably favors Honda and fail
Plaintiffs reasonable expectations for product performance.

300.   Honda was and is in privity with each of the Plaintiffs and class
members by law and/or by fact. First, Plaintiffs have had sufficient direct dealings
with Honda and/or its authorized dealers, franchisees, representatives, and agents to
establish privity of contract. Alternatively, Plaintiffs and class members are intended
third-party beneficiaries of contracts, including express warranties, between Honda
and its dealers, franchisees, representatives and agents; Honda's advertisements
were aimed at Plaintiffs and class members, and Honda's warranties were expressly
written for the benefit of Plaintiffs and class members as end users of the Class
Vehicles. Honda's authorized dealers, franchisees, representatives, and agents, on
the other hand, were not intended to be the ultimate consumers of the Class Vehicles
and have no rights under the warranty agreements provided by Honda; these
intermediary entities made no changes to Honda's Class Vehicles product, nor made
any additions to the warranties issued by Honda. Further, Honda is estopped from
limiting claims for common law and statutory violations based on a defense of lack
of privity.

301.   As a direct and proximate result of the breaches of these implied
warranties Plaintiffs have suffered damages, injury in fact and ascertainable loss in
an amount to be determined at trial, including repair and replacement costs and
damages to other property.

302.   Honda is liable to Plaintiffs and Class Members for damages caused
by the above Defect.

303.   Plaintiffs demand judgment against Honda for compensatory damages
for themselves and each class member, for the establishment of a common fund,
plus additional remedies as this Court deems fit.

1

**THIRD CLAIM FOR RELIEF**

2

**Breach of Implied Warranties**

3

**(On behalf of the residents of the following States: Alaska; Arkansas; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; Wyoming)**

4

5

6

7

8

304.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

9

10

305.    Plaintiffs bring this claim individually and on behalf of the residents of Alaska, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Indiana, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, West Virginia, and Wyoming against Honda.

11

12

13

14

15

16

17

306.    Each Plaintiff brings their claim under the laws of their own State, as codified below:

18

19

        a.  Conn. Gen. Stat. §§ 42a-2-314 and 42a-2-315, *et seq.*;

20

        b.  Fla. Stat. Ann. §§ 672.314 and 672.315, *et seq.*;

21

        c.  13 Pa. Stat. Ann. §§ 2314 and 2315, *et seq.*; and

22

        d.  Va. Code Ann. §§ 8.2-314 and 8.2-315, *et seq.*

23

307.    Plaintiffs also bring claims on behalf of the Class under the laws of the following States as codified below:

24

25

        a.  Alaska Stat. §§ 45.02.314 and 45.02.315, *et seq.*;

26

        b.  Ark. Code Ann. §§ 4-2-314 and 4-2-315, *et seq.*;

27

        c.  Colo. Rev. Stat. Ann. §§ 4-2-314 and 4-2-315, *et seq.*;

28

        d.  Del. Code Ann. Tit. 6, §§ 2-314 and 2-315, *et seq.*;

e. D.C. Code §§ 28:2-314 and 28:2-315, *et seq.*;

f. Haw. Rev. Stat. §§ 490:2-314 and 490:2-315, *et seq.*;

g. Ind. Code §§ 26-1-2-314 and 26-1-315, *et seq.*;

h. Kan. Stat. Ann. §§ 84-2-314 and 84-2-315, *et seq.*;

i. La. Civ. Code Ann. Art. 2520, *et seq.*;

j. Md. Code Ann., Com. Law §§ 2-314 and 2-315, *et seq.*;

k. Me. Rev. Stat. Ann. Tit. 11, §§ 2-314 and 2-315, *et seq.*;

l. Mass. Gen. Laws ch. 106, §§ 2-314 and 2-315, *et seq.*;

m. Mich. Comp. Laws Ann. §§ 440.2314 and 440.2315, *et seq.*;

n. Minn. Stat. §§ 336.2-314 and 336.2-315, *et seq.*;

o. Miss. Code Ann. §§ 75-2-314 and 75-2-315, *et seq.*;

p. Mo. Rev. Stat. §§ 400.2-314 and 400.2-315, *et seq.*;

q. Mont. Code Ann. §§ 30-2-314 and 30-2-315, *et seq.*;

r. Neb. Rev. Stat. Ann. §§ 2-314 and 2-315, *et seq.*;

s. Nev. Rev. Stat. §§ 104.2314 and 104.2315, *et seq.*;

t. N.H. Rev. Stat. Ann. §§ 382-A:2-314 and 382-A:2-315, *et seq.*;

u. N.J. Stat. Ann. §§ 12A:2-314 and 12A-315, *et seq.*;

v. N.M. Stat. Ann. §§ 55-2-314 and 55-2-315, *et seq.*;

w. N.D. Cent. Code §§ 41-02-31 and 41-02-32, *et seq.*;

x. Ohio Rev. Code Ann. §§ 1302.27 and 1302.28, *et seq.*;

y. Okla. Stat. Tit. 12A, §§ 2-314 and 2-315, *et seq.*;

z. R.I. Gen. Laws §§ 6A-2-314 and 6A-2-315, *et seq.*;

aa. S.C. Code Ann. §§ 36-2-314 and 36-2-315, *et seq.*;

bb. S.D. Codified Laws §§ 57A-2-314 and 57A-2-315, *et seq.*;

cc. Tex. Bus. & Com. Code Ann. §§ 2.314 and 2.315, *et seq.*;

dd. Utah Code Ann. §§ 70A-2-314 and 70A-2-315, *et seq.*;

ee. Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2-315, *et seq.*;

ff. W. Va. Code §§ 46-2-314 and 46-2-315, *et seq.*; and

gg. Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2-315, *et seq.*

308.  Honda is a manufacturer and seller, as it designed, assembled, fabricated, produced, constructed, and prepared the Class Vehicles before they were sold. Honda is a seller because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for resale or use, with actual knowledge of the AC System Defect.

309.  Honda impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and Class Members, were merchantable, fit, and safe for their ordinary use, not otherwise injurious to consumers. Honda warranted that the Class Vehicles' primary components, including the air conditioning system, would operate properly.

310.  Honda did not effectively disclaim these implied warranties.

311.  The Class Vehicles sold by Honda were defective at the time of their sale. Honda breached its implied warranty of merchantability, in that, the Class Vehicles were not merchantable because they cannot be driven safely under all reasonably expected weather conditions and thus are not reliable for safe transportation. The Class Vehicles' AC System suffered from the Defect described herein, such that their environmental controls, including the system's ability to defog windshields, repeatedly failed to function properly, sometimes beginning early on in the vehicles' expected useful life.

312.  Honda, through its agent dealerships, sold Class Vehicles to Plaintiffs.

313.  Plaintiffs were each persons Honda reasonably might have expected to purchase and use a Class Vehicle.

314.  Plaintiffs relied upon Honda's implied warranties that the Class Vehicles they purchased were of merchantable quality and fit for their intended purposes. The AC System Defect rendered its AC Systems useless, caused their Class Vehicles to be unreasonably dangerous in certain weather conditions, and posed an unreasonable risk of damage to other expensive components of the Class

Vehicles' AC System.

315.   Honda placed the Class Vehicles in the stream of commerce and expected them to reach consumers without substantial change in the condition in which they were sold. Indeed, Class Vehicles reached Plaintiffs—persons that would reasonably be expected to use, consume, or be affected by the performance of a Class Vehicle—without substantial change in the condition in which they were sold.

316.   The Class Vehicles are defective in materials, workmanship and/or design, as outlined throughout this Complaint. Despite knowledge of the AC System Defect, Honda failed to warn consumers about the defect before or after the sale of the Class Vehicles.

317.   In situations such as Plaintiffs'—where the driver used the Class Vehicle as intended and in a foreseeable and reasonable manner—the AC System should not fail.

318.   Nevertheless, Plaintiffs' Class Vehicles AC Systems did fail, and they did so because of the Defect that existed in the Class Vehicles at the time they left the manufacturer's control.

319.   Honda knew or should have known of the Defect in Class Vehicles and that, as a result, they were unfit for their intended and foreseeable purpose.

320.   Honda did not warn or alert purchasers or users of the foregoing Defect, despite its knowledge of it.

321.   As a direct and proximate result of the Defect in the Class Vehicles, Plaintiffs have sustained injuries, damages, and losses.

322.   Any attempt by Honda to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect also is procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302, as adopted by the states listed in this Count. Honda knew or should have known about the Defect in the Class Vehicles prior to selling Class Vehicles while continuing to market Class

Vehicles as safe and reliable, had unequal bargaining power and misrepresented the

Class Vehicles' reliability, and limited remedies unreasonably favors Honda and fail

Plaintiffs reasonable expectations for product performance.

323.    Actual and/or constructive notice was duly given to Honda of the

breaches of these warranties, and Honda has yet failed to cure.

324.    As a direct and proximate result of the breaches of these implied

warranties Plaintiffs have suffered damages, injury in fact and ascertainable loss in

an amount to be determined at trial, including repair and replacement costs and

damages to other property.

325.    Honda is liable to Plaintiffs and Class Members for damages caused

by the above Defect.

326.    Plaintiffs demand judgment against Honda for compensatory damages

for themselves and each class member, for the establishment of a common fund,

plus additional remedies as this Court deems fit.

**FOURTH CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the National Class and California Subclass)**

327.    Plaintiffs incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

328.    Plaintiffs bring this claim individually and on behalf of the National

Class and the California Subclass against Honda.

329.    Both AHM and HNA have their principal place of business in this

District, and specifically in Torrance, California.

330.    Upon information and belief, Torrance, the principal place of business

for both AHM and HNA, is the location where the decisions regarding marketing,

advertising, and other promotional literature are made, as well as the location of

product development and other misconduct alleged in this Complaint occurred.

331.    Since both Defendants are headquartered in California and their misconduct allegedly originated in California, and each has such significant contacts between California and the claims asserted by the National Class, application of California UCL would not be arbitrary or unfair to defendants.

332.    California Business & Professions Code § 17200, et seq. ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

333.    Honda engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq*.

334.    Honda's conduct is <u>unlawful</u> in that it violates state express and implied warranty laws as set forth in the first and second causes of action; violates the Consumer Legal Remedies Act, Cal. Civil Code § 1750 *et seq.* as set forth in the fifth cause of action; violates the Song-Beverly Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq*. as set forth in the sixth and seventh causes of action; and violates the consumer protection laws of Plaintiffs' home states as further alleged herein.

335.    Honda's conduct is <u>unfair</u> under the UCL in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiffs and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct. Its actions were unfair in that:

a.    Honda advertised the Class Vehicles as "safe" and "pushing the boundaries of automotive engineering" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the Defect, which renders the vehicles dangerously unreliable.

b.    Honda knew the Class Vehicles suffered from inherent defects, were defective in materials, workmanship and/or design, would fail to operate as intended, and were not suitable for their intended use.

c. In failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

336. Honda's actions and practices constitute "<u>fraudulent</u>" business practices in violation of the UCL because, among other things, their practices are likely to and did in fact deceive reasonable consumers.

a. Honda advertised the Class Vehicles as "safe" and "pushing the boundaries of automotive engineering" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the Defect, which renders the vehicles dangerously unreliable.

b. Honda knew the Class Vehicles suffered from inherent defects, were defective in materials, workmanship and/or design, would fail to operate as intended, and were not suitable for their intended use.

c. In failing to disclose the Defect, Honda knowingly and intentionally concealed material facts and breached its duty not to do so.

337. Plaintiffs and Class Members are reasonable consumers who do not expect their Class Vehicles' air conditioning system to fail prematurely, exposing them to unreasonable safety risks and expense.

338. By its conduct, Honda has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

339. Honda had a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

a. Honda was in a superior position to know the true facts about the Class Vehicles' safety defect;

b. Honda made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and

c. Honda actively concealed the defective nature of the Class Vehicles from Plaintiffs and Class Members and continues to

conceal the defective nature of the Class Vehicles, even after Class Members have reported problems.

340.   The facts regarding the Defect that Honda concealed from or failed to disclose to Plaintiffs and Class are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiffs and Class Members known that the Class Vehicles were defective and posed a safety hazard, they would not have purchased or leased Class Vehicles, or would have paid less for them.

341.   Honda's conduct was and is likely to deceive consumers. Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business and were capable of deceiving a substantial portion of the purchasing public.

342.   As a result of their reliance on Honda's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles are worth less than they would be if they did not have the AC System Defect.

343.   As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

344.   Honda has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

345.   Plaintiffs and the Class seek all remedies available pursuant to § 17070, *et seq.* of the California Business & Professions Code, including full restitutionary damages allowable by law, the diminished value of the Class

Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### Violation of Consumer Legal Remedies Act – Civil Code § 1750, *et seq.*
### (On behalf of the California Subclass)

346.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

347.   Plaintiffs bring this claim individually and on behalf of the California Subclass of California residents who formerly or currently own or lease one or more of the Vehicles.

348.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "CLRA") because Honda's actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods or services to consumers.

349.   Plaintiffs and each member of the Class are consumers as defined by California Civil Code §1761(d). Honda intended to sell the Vehicles.

350.   The Vehicles are goods within the meaning of Civil Code §1761(a).

351.   Honda violated the CLRA in at least the following respects:

> a.  in violation of §1770(a)(5), Defendant represented that the Vehicles have approval, characteristics, and uses or benefits which they do not have (because they are defective);
>
> b.  in violation of §1770(a)(7), Defendant represented that the Vehicles are of a particular standard, quality or grade, when they are of another (having a design defect or manufacturing defect or both);

c.  in violation of Section 1770(a)(9), Defendant have advertised the Vehicles as safe with the intent not to sell them as advertised (with AC System Defect); and

d.  in violation of §1770(a)(16), Defendant represented that the Vehicles have been supplied in accordance with previous representations (being free of design or manufacturing defects), when they were not.

352.  Honda violated the Act by representing the Vehicles were safe and free of defects when they were not. Honda knew, or should have known, that the representations and advertisements were false and misleading.

353.  Honda's acts and omissions constitute unfair, deceptive, and misleading business practices in violation of Civil Code §1770(a).

354.  Under California Civil Code section 1780(a), Plaintiff and members of the Class seek injunctive and equitable relief for Honda's violations of the CLRA. Plaintiff and the Class reserve the right to amend this Complaint to include a request for damages under the CLRA after complying with California Civil Code 1782(a) after the commencement of this action.

## SIXTH CLAIM FOR RELIEF
**Breach of Express Warranty Under the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq*.**
**(On behalf of the California Subclass)**

355.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

356.  Plaintiffs bring this claim individually and on behalf of the California Subclass against Honda.

357.  Plaintiffs and Class Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

358.   Honda is a "manufacturer" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

359.   The Class Vehicles at issue are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

360.   The Powertrain Warranty and Limited Warranty are "express warranties" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

361.   Honda provided these warranties to Plaintiffs and California Subclass members.

362.   However, Honda knew or should have known that the warranties were false and/or misleading.

363.   Honda breached these warranties as described in more detail above. Without limitation, the Class Vehicles fail to provide air conditioning as warranted, fail to protect the air conditioning systems from foreseeable and usual road debris when the Class Vehicles are subjected to expected and normal use. The Class Vehicles share a common design defect in that the Class Vehicles fail to operate as represented by Honda, specifically, that they are safe for ordinary use.

364.   Plaintiffs and other Class Members reasonably relied on Honda's express warranties when purchasing or leasing the Class Vehicles. However, the Class Vehicles did not perform as warranted, unbeknownst to Plaintiffs and other Class Members. Honda breached these warranties by providing a product containing defects that Honda never disclosed to Plaintiffs and other Class Members.

365.   Affording Honda a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Indeed, Plaintiffs and many others already alerted Honda of the defect, but Honda failed to cure, and even denied, the Defect. At the time of sale or lease of each Class Vehicle, Honda knew, or should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicle's inability to perform as warranted, but nonetheless

failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

366.    Honda has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and Class Members, because the Class Vehicles fail to perform as represented due to the undisclosed Defect. Honda failed to fully cover or pay for necessary inspections, repairs and/or vehicle replacements for Plaintiffs and the Class.

367.    Honda is under a continuing duty to inform its customers of the nature and existence of potential safety related defects in the Class Vehicles.

368.    Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the AC System Defect in the Class Vehicles.

369.    Plaintiffs and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Honda's wrongful acts and practices, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

370.    In addition, in accordance with Cal. Civ. Code §§ 1793.2 and 1794, Plaintiffs and California Subclass members seek an order enjoining Honda's unfair and/or deceptive acts or practices, punitive damages, civil penalties, attorneys' fees and expenses, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

## SEVENTH CLAIM FOR RELIEF
### Breach of Implied Warranty Under the Song-Beverly Consumer Warranty

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Act, California Civil Code §§ 1792 and 1791.1, *et seq*.**
**(On behalf of the California Subclass)**

371.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

372.  Plaintiffs bring this claim individually and on behalf of the California Subclass against Honda.

373.  Plaintiffs and Class Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

374.  Honda is a "manufacturer" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

375.  The Class Vehicles at issue are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

376.  The Powertrain Warranty and Limited Warranty are "express warranties" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

377.  At all relevant times, Honda manufactured, distributed, warranted, and/or sold the Class Vehicles. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

378.  Honda provided an implied warranty to Plaintiffs and Class Members, which warranted that the Class Vehicles, including the components parts, are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of providing reasonably safe and reliable transportation.

379.  Honda impliedly warranted that the Class Vehicles are of merchantable quality and fit for such use. The implied warranty includes, among other things: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Honda are safe and reliable for providing transportation;

and (ii) a warranty that the Class Vehicles are fit for their intended use.

380.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective and suffer from Defect(s) that compromise their reliability, durability, and safety.

381.    As a result of Honda's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles have suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail or have failed before their expected useful life has run. The Defect creates a high risk of accidents, injuries, and even death.

382.    Honda's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792 and 1791.1, et seq.

383.    Plaintiffs and the Class seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, civil penalties, and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

**EIGHTH CLAIM FOR RELIEF**
**Connecticut Unfair Trade Practices Act**
**Conn. Gen. Stat. Title 42, Ch. 735a**
**(On behalf of the Connecticut Subclass)**

384.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

385.    Connecticut Unfair Trade Practices Act ("CUTPA") prohibits "unfair

methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" C.G.S.A. § 42-110b.

386.    Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by CUTPA, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. C.G.S.A. § 42-110g.

387.    In any action brought by a person pursuant to CUTPA, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. In a class action in which there is no monetary recovery, but other relief is granted on behalf of a class, the court may award, to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorneys' fees. In any action brought pursuant to CUTPA, the court may, in its discretion, order, in addition to damages or in lieu of damages, injunctive or other equitable relief. C.G.S.A. § 42-110g.

388.    Plaintiffs and the Connecticut Subclass are "persons" as defined by CUTPA. C.G.S.A. § 42- 110a(3).

389.    Defendants are a "person" as defined by CUTPA. C.G.S.A. § 42-110a(3).

390.    Plaintiffs and the Connecticut Subclass' purchase of a Class Vehicle is a "Trade" or "Commerce" as defined by CUTPA. C.G.S.A. § 42-110a(4).

391.    Defendants are in the business of selling motor vehicles and therefore are bound by CUTPA which prohibits engaging in unfair or deceptive acts in the conduct of any commerce or trade.

392.    In the course of their business, Defendants knowingly, intentionally and/or willfully failed to disclose and actively concealed the dangerous AC System Defect in the Class Vehicles as described herein and otherwise engaged in activities

with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Accordingly, Defendants engaged in unfair and deceptive acts or practices.

393.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and the Connecticut Subclass could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly, intentionally and/or willfully concealed from Plaintiffs and the Connecticut Subclass that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

394.    These acts and practices have deceived Plaintiffs, the Connecticut Subclass and the public. In failing to disclose the Defect and suppressing material facts from Plaintiffs and the Connecticut Subclass, Defendants breached their duties to disclose these facts, violated CUTPA, and caused injuries to Plaintiffs and the Connecticut Subclass. Defendants' omissions and acts of concealment pertained to information that was material to Plaintiffs and Connecticut Subclass, as it would have been to all reasonable consumers.

395.    Defendants' acts and omissions were likely to mislead a reasonable consumer into purchasing Defendants' products. Defendants' deceptive acts are material because they concern an essential feature of the Class Vehicles—the air conditioning system.

396.    The sale and distribution in Connecticut of Class Vehicles was a consumer-oriented act, and therefore is actionable under CUTPA.

397.    Plaintiffs and the Connecticut Subclass relied on Defendants'

misrepresentations and omissions; had Plaintiffs and the Connecticut Subclass known Class Vehicles suffered from the Defect, they would not have purchased Class Vehicles and would have avoided the extensive repair costs associated therewith, or would have paid less for their Class Vehicles. Defendants' conduct thus proximately caused the injuries Plaintiffs and the Connecticut Subclass have suffered and complain of herein.

398.   At all times, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous.

399.   Defendants' actions impact the public interest because Plaintiffs and the Connecticut Subclass were injured in exactly the same way as thousands of others who purchased the Class Vehicles.

400.   Defendants also have refused to act on grounds generally applicable to Plaintiffs and the Connecticut Subclass, thereby making final injunctive relief appropriate.

401.   Defendants persist in their deceptive and unfair marketing and sales practices regarding the Class Vehicles to the detriment of consumers across the country, including Plaintiffs and the Connecticut Subclass.

402.   If Defendants are allowed to continue with these practices, consumers, including Plaintiffs and the Connecticut Subclass, will be irreparably harmed. Plaintiffs and the Connecticut Subclass do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendants' deceptive marketing and sale of the Class Vehicles.

403.   Plaintiffs and the Connecticut Subclass thus are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees, as well as injunctive relief requiring Defendants to cease their unfair and deceptive practices relating to the sale of the Class Vehicles.

## NINTH CAUSE OF ACTION
### Violation of Florida's Unfair & Deceptive Trade Practices Act, Fla. Stat. § 501.201, *et seq.*
### (On behalf of the Florida Subclass)

404.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

405.   Plaintiff Robinson brings this action on behalf of himself and the Florida Subclass against all Defendants.

406.   The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202 (2).

407.   Plaintiff and the Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

408.   Honda engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

409.   The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." Fla. Stat. § 501.204(1). In the course of their business, Honda, through their agents, employees, and/or subsidiaries, violated the FUDTPA as detailed above. Specifically, in manufacturing, selling, and designing the Class Vehicles, and in marketing, offering for sale, and selling the defective Class Vehicles, Defendants engaged in unfair or deceptive acts or practices prohibited by Fla. Stat. § 501.204(1), including, but not limited to:

a.   causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b.    representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c.    representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d.    advertising the Class Vehicles with the intent not to sell or lease them as advertised;

e.    engaging in other conduct which created a likelihood of confusion or of misunderstanding; and

f.    using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale or lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

410.    Honda's scheme and concealment of the true characteristics of the AC System Defect were material to Plaintiff and the Class, as Honda intended. Had they known the truth, Plaintiff and the Florida Subclass would not have purchased or leased the Class Vehicles, or—if the Class Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

411.    Plaintiff and Florida Subclass members had no way of discerning that Honda's representations were false and misleading, or otherwise learning the facts that Honda had concealed or failed to disclose, because Honda had exclusive knowledge of the information surrounding the AC System Defect and did not alert Plaintiff and Class Members to said information prior to their purchase of their Class Vehicles. Plaintiff and Class members did not, and could not, unravel Honda's deception on their own.

412.    Plaintiff    and    the    Florida    Subclass    relied    on    Honda's

misrepresentations and omissions. Had Plaintiff and the Florida Subclass known Class Vehicles suffered from the Defect, they would not have purchased Class Vehicles and would have avoided the extensive repair costs associated with the AC System Defect, or would have paid less for their Class Vehicles.

413.    Honda had an ongoing duty to Plaintiff and the Florida Subclass to refrain from unfair and deceptive practices under the FUDTPA in the course of their business. Specifically, Honda owed Plaintiff and the Florida Subclass Members a duty to disclose all the material facts concerning the AC System Defect because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff and the Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

414.    Plaintiff and Florida Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Honda's concealment, misrepresentations, and/or failure to disclose material information.

415.    Honda's violations present a continuing risk to Plaintiff and the Florida Subclass Members, as well as to the general public. Honda's unlawful acts and practices complained of herein affect the public interest.

416.    Pursuant to Fla. Stat. §§ 501.2105(1)-(2), Plaintiff and the Florida Subclass Members seek an order enjoining Honda's unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the FUDTPA.

417.    Pursuant to Florida Statutes section 501.211(2), Plaintiffs request that the Court grant attorneys' fees and costs.

**TENTH CLAIM FOR RELIEF**
**Oregon Unlawful Trade Practices Act**
**Or. Rev. Stat. §§ 646.605, et seq.**
**(On behalf of the Oregon Subclass)**

418.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein. The Oregon Unlawful Trade Practices

Act ("UTPA") broadly prohibits "unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(u).

419.    Plaintiffs and the Oregon Subclass are "person[s]" pursuant to UTPA. Or. Rev. Stat. § 646.605.

420.    Defendants engaged in "trade" or "commerce" pursuant to UTPA. Or. Rev. Stat. § 646.605. 172.

421.    In the course of their business, Defendants knowingly, intentionally and/or willfully failed to disclose and actively concealed the dangerous AC System Defect in the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Accordingly, Defendants engaged in unfair and deceptive acts or practices.

422.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and the Oregon Subclass could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly, intentionally and/or willfully concealed from Plaintiffs and the Oregon Subclass that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

423.    These acts and practices have deceived Plaintiffs, the Oregon Subclass and the public. In failing to disclose the Defect and suppressing material facts from Plaintiffs and the Oregon Subclass, Defendants breached their duties to disclose these facts, violated the UTPA, and caused injuries to Plaintiffs and the Oregon Subclass. Defendants' omissions and acts of concealment pertained to information

that was material to Plaintiffs and Oregon Subclass, as it would have been to all reasonable consumers.

424.   These acts and omission are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

425.   Defendants intended for Plaintiffs and the Oregon Subclass to rely on Defendants' omissions regarding the Defect.

426.   Plaintiffs and the Oregon Subclass justifiably acted or relied to their detriment upon Defendant's omissions of fact concerning the Defect as evidenced by Plaintiffs and the Oregon Subclass's purchases of Class Vehicles.

427.   Had Defendants disclosed all material information regarding the Defect to Plaintiffs and the Oregon Subclass, Plaintiff and the Oregon Subclass would not have purchased or leased Class Vehicles or would have paid less to do so.

428.   Defendants' omissions have deceived Plaintiffs and the Oregon Subclass, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

429.   Defendants' acts and omissions were likely to mislead a reasonable consumer into purchasing Defendants' products. Defendants' deceptive acts are material because they concern an essential feature of the Class Vehicles—the air conditioning system.

430.   The sale and distribution in Oregon of Class Vehicles was a consumer-oriented act, and therefore is actionable under UTPA.

431.   Plaintiffs and the Oregon Subclass relied on Defendants' misrepresentations and omissions; had Plaintiffs and the Oregon Subclass known Class Vehicles suffered from the Defect, they would not have purchased Class Vehicles and would have avoided the extensive repair costs associated therewith or would have paid less for their Class Vehicles. Defendants' conduct thus

proximately caused the injuries Plaintiffs and the Oregon Subclass have suffered and complain of herein.

432.    At all times, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous.

433.    Defendants' actions impact the public interest because Plaintiffs and the Oregon Subclass were injured in exactly the same way as thousands of others who purchased the Class Vehicles.

434.    Defendants also have refused to act on grounds generally applicable to Plaintiffs and the Oregon Subclass, thereby making final injunctive relief appropriate.

435.    Defendants persist in their deceptive and unfair marketing and sales practices regarding the Class Vehicles to the detriment of consumers across the country, including Plaintiffs and the Oregon Subclass.

436.    If Defendants are allowed to continue with these practices, consumers, including Plaintiffs and the Oregon Subclass, will be irreparably harmed. Plaintiffs and the Oregon Subclass do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendants' deceptive marketing and sale of the Class Vehicles.

437.    Plaintiffs and the Oregon Subclass thus are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees, as well as injunctive relief requiring Defendants to cease their unfair and deceptive practices relating to the sale of the Class Vehicles.

**ELEVENTH CLAIM FOR RELIEF**
**Pennsylvania Unfair Trade Practices**
**And Consumer Protection Law**
**73 Pa. Stat. § 201-1, *et seq.***
**(On behalf of the Pennsylvania Subclass)**

438.    Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

439.    Plaintiffs are natural persons who purchased Class Vehicles for personal, family or household purposes.

440.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute. 73 Pa. Stat. § 201-3.

441.    Defendants engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and the Pennsylvania Subclass that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of PUTPCPL section 201-2:

> (4)(ii)    Misrepresenting the source, sponsorship, approval or certification of goods or services;

> (4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (4)(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (4)(ix) Advertising goods and services with intent not to sell them as advertised; and

> (4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

442. Defendants knew that Class Vehicles and their AC Systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

443. Defendants were under a duty to Plaintiffs and the Pennsylvania Subclass to disclose the defective nature of the Class Vehicles and the Defect because:

a.   Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

b.   Plaintiffs and the Pennsylvania Subclass could not reasonably have been expected to learn or discover that the Class Vehicles and had a dangerous safety defect until manifestation of the defect;

c.   Defendants knew that Plaintiffs and the Pennsylvania Subclass could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs necessitated thereby until the manifestation of the defect; and

d.   Defendants actively concealed the safety and security defect and the associated repair costs by claiming the Defect does not exist and, in many cases, repairing Class Vehicles using similarly defective AC System components.

444. In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

445. The facts concealed or not disclosed by Defendants to Plaintiffs and the Pennsylvania Subclass are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiffs and the Pennsylvania Subclass known

about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

446.    Unfair or deceptive acts and practices as defined by the PUTPCPL also include "[f]ailing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. Stat. § 201-2(4)(xiv). Defendants violated the PUTPCPL by refusing to repair Plaintiffs and the Pennsylvania Subclass' AC Systems at no cost.

447.    Defendants' failure to honor their warranty terms proximately caused injuries to Plaintiffs and the Pennsylvania Subclass. Had Defendants honored their warranty, Plaintiffs and the Pennsylvania Subclass would not have incurred substantial repair costs.

448.    Pursuant to 73 Pennsylvania Statutes section 201-9.2, Plaintiffs request that the Court grant treble damages.

### TWELFTH CLAIM FOR RELIEF
### Virginia Consumer Protection Act
### VA Code § 59.1-196, *et seq*.
### (On behalf of the Virginia Subclass)

449.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

450.    Virginia's General Assembly intended the Virginia Consumer Protection Act ("VCPA") "as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197.

451.    Plaintiffs and the Virginia Subclass are "consumers" within the meaning of the VCPA.

452.    Defendants are "suppliers" within the meaning of the VCPA.

453.    Defendants' actions, as set forth above, occurred in the conduct of a

"consumer transaction" within the meaning of the VCPA.

454.   Defendants engaged in unfair and deceptive acts in the conduct of a consumer transaction in violation of the VCPA by the practices described above, including knowingly, intentionally and/or willfully refusing to disclose and concealing from Plaintiffs and the Virginia Subclass that the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate the VCPA, at a minimum, in the following ways:

a.   Misrepresenting the source, sponsorship, approval, or certification of goods or services;

b.   Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;

c.   Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;

d.   Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised; and

e.   Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

455.   Defendants knew that Class Vehicles and their AC Systems suffer from a defect in materials, workmanship and/or design, would fail prematurely, and were not suitable for their intended use.

456.   Defendants were under a duty to Plaintiffs and the Virginia Subclass to disclose the defective nature of the Class Vehicles and the Defect because:

a.   Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;

b.  Plaintiffs and the Virginia Subclass could not reasonably have been expected to learn or discover that Class Vehicles suffered from a dangerous safety defect until the Defect manifested;

c.  Defendants knew that Plaintiffs and the Virginia Subclass could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs necessitated thereby until the Defect manifested;

d.  Defendants also actively concealed the safety and security defect and the associated repair costs by claiming the Defect does not exist and, in many cases, repairing Class Vehicles using similarly defective AC System components.

457.  In failing to disclose the Defect and the associated safety risks and repair costs it imposes, Defendants have knowingly, intentionally and/or willfully concealed material facts and breached their duty not to do so.

458.  The facts concealed or not disclosed by Defendants to Plaintiffs and the Virginia Subclass are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.

459.  Defendants also knowingly misrepresented the Class Vehicles as fit to be used for the purpose for which they were intended, when, in fact, Defendants knew the Class Vehicles were defective, dangerous, and not what was advertised. Indeed, Defendants misrepresented the AC Systems in Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not.

460.  Plaintiffs and the Virginia Subclass relied on Defendants' misrepresentations and omissions; had Plaintiffs and the Virginia Subclass known Class Vehicles suffered from the Defect, they would not have purchased Class Vehicles and would have avoided the extensive repair costs associated therewith,

or would have paid less for their Class Vehicles. Defendants' conduct thus proximately caused the injuries Plaintiffs and the Virginia Subclass have suffered and complained of herein.

461.    Pursuant to Virginia Code section 59.1-204, Plaintiffs request that the Court grant treble damages and attorneys' fees and costs.

### THIRTEENTH CLAIM FOR RELIEF
### Washington Consumer Protection Act
### Wash. Rev. Code Ann. §§ 19.86.010, et seq.
### (On behalf of the Washington Subclass)

462.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

463.    The Washington Consumer Protection Act ("WCPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Wash. Rev. Code Ann. § 19.86.020.

464.    Plaintiffs and the Washington Subclass are "persons" pursuant to WCPA. Wash. Rev. Code Ann. § 19.86.010.

465.    Defendants engaged in "trade" or "commerce" pursuant to WCPA. Wash. Rev. Code Ann. § 19.86.010.

466.    Defendants' conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, Defendants' manufacture and sale of Class Vehicles with the Defect which Defendants failed to adequately investigate, disclose and remedy.

467.    Defendants knew about The Defect prior to the sale of the Class Vehicles but did not disclose the existence of the Defect to Plaintiffs and the Washington Subclass and concealed those defects.

468.    Defendant omitted information regarding the safety and reliability of the Class Vehicles.

469.    Defendants are in the business of selling motor vehicles and therefore

are bound by WCPA which prohibits engaging in unfair or deceptive acts in the conduct of any commerce or trade.

470.   In the course of their business, Defendants knowingly, intentionally and/or willfully failed to disclose and actively concealed the Defect in the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles. Accordingly, Defendants engaged in unfair and deceptive acts or practices.

471.   Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiffs and the Washington Subclass could not reasonably be expected to learn or discover the true facts related to this Defect. Defendants, by the conduct, statements, and omissions described above, also knowingly, intentionally and/or willfully concealed from Plaintiffs and the Washington Subclass that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem).

472.   These acts and practices have deceived Plaintiffs, the Washington Subclass and the public. In failing to disclose the Defect and suppressing material facts from Plaintiffs and the Washington Subclass, Defendants breached their duties to disclose these facts, violated WCPA, and caused injuries to Plaintiffs and the Washington Subclass. Defendants' omissions and acts of concealment pertained to information that was material to Plaintiffs and Washington Subclass, as it would have been to all reasonable consumers.

473.   Defendants' acts and omissions were likely to mislead a reasonable consumer into purchasing Defendants' products. Defendants' deceptive acts are

material because they concern an essential feature of the Class Vehicles—the air conditioning system.

474.   The sale and distribution in Washington of Class Vehicles was a consumer-oriented act, and therefore is actionable under WCPA.

475.   Plaintiffs and the Washington Subclass relied on Defendants' misrepresentations and omissions; had Plaintiffs and the Washington Subclass known Class Vehicles suffered from the Defect, they would not have purchased Class Vehicles and would have avoided the extensive repair costs associated therewith, or would have paid less for their Class Vehicles. Defendants' conduct thus proximately caused the injuries Plaintiffs and the Washington Subclass have suffered and complain of herein.

476.   At all times, Defendants' conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous.

477.   Defendants' actions impact the public interest because Plaintiffs and the Washington Subclass were injured in exactly the same way as thousands of others who purchased the Class Vehicles.

478.   Defendants also have refused to act on grounds generally applicable to Plaintiffs and the Washington Subclass, thereby making final injunctive relief appropriate.

479.   Defendants persist in their deceptive and unfair marketing and sales practices regarding the Class Vehicles to the detriment of consumers across the country, including Plaintiffs and the Washington Subclass.

480.   If Defendants are allowed to continue with these practices, consumers, including Plaintiffs and the Washington Subclass, will be irreparably harmed. Plaintiffs and the Washington Subclass do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendants' deceptive marketing and sale of the Class Vehicles.

481. Plaintiffs and the Washington Subclass thus are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees, as well as injunctive relief requiring Defendants to cease their unfair and deceptive practices relating to the sale of the Class Vehicles.

### FOURTEENTH CLAIM FOR RELIEF
### Negligence
### (On behalf of the National Class)

482. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

483. Honda owed Class Members a duty of reasonable care to ensure that the air conditioning system within the Class Vehicles would operate safely and properly for its reasonably anticipated use.

484. Honda breached its duty by failing to ensure that the condensers used in the Class Vehicles were free from the Defect. Honda also breached its duty by failing to warn Plaintiffs and Class Members that the condensers used in Class Vehicles were not free from the Defect or the safety hazards caused by it.

485. As a direct and proximate result of Honda's negligence, Class Vehicles' AC Systems are prone to fail when the Class Vehicles are operated in reasonable, usual and ordinary driving conditions, leading to air conditioning system failure in Class Vehicles, creating a safety hazard because they cannot be driven safely under all reasonably expected weather conditions and thus are not reliable for safe transportation. As a result, Plaintiffs and Class Members have suffered damages.

### FIFTEENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the National Class)

486.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

487.    As described above, Honda sold Class Vehicles to Class Members even though the air conditioning system installed in those vehicles are defective and pose a safety hazard, and failed to disclose its knowledge of the Defect and its attendant risks at the point of sale or otherwise. Furthermore, Honda charges for repairs of the air conditioning system without disclosing that the AC System Defect is widespread and that the repairs do not address its root cause.

488.    As a result of its fraudulent acts and omissions related to the defective air conditioning system, Honda obtained monies which rightfully belong to Plaintiffs and Class Members to their detriment.

489.    Honda appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth. Honda also received monies for vehicles that Plaintiffs and Class Members who would not have otherwise purchased Class Vehicles had they been aware of the Defect.

490.    Honda's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

491.    Plaintiffs and Class Members are entitled to restitution of the profits Honda unjustly obtained, plus interest.

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, request the Court enter judgment against Honda, and accordingly request the following:

    a.    An order certifying the proposed Class and Subclasses and designating Plaintiffs as named representatives of the Classes and Subclass, and designating the undersigned as Class Counsel;

    b.    A declaration that Honda is financially responsible for notifying all

1  Class Members about the defective nature of the Class Vehicles;

2  c.  A declaration that both the Basic Limited and Powertrain Limited
3      Warranties fail their essential purpose;

4  d.  An order enjoining Honda from further deceptive distribution, sales,
5      and lease practices with respect to their Class Vehicles; to repair all
6      other damages to the Class Vehicles caused by the Defect;

7  e.  A further order enjoining Honda from the conduct alleged herein,
8      including an order enjoining Honda from concealing the existence of
9      the Defect during distribution, sales, and advertisements, as well as
10     during customer and warranty service visits for the Class Vehicles;

11 f.  An award to Plaintiffs and Class Members of compensatory, actual,
12     exemplary, and statutory damages, including interest, in an amount to
13     be proven at trial;

14 g.  A declaration that Honda must disgorge, for the benefit of Plaintiffs
15     and Class Members, all or part of the ill-gotten profits it received from
16     the sale or lease of their Class Vehicles, or make full restitution to
17     Plaintiffs and Class Members;

18 h.  An award of attorneys' fees and costs pursuant to California Code of
19     Civil Procedure § 1021.5 and/or all other applicable laws;

20 i.  An award of pre-judgment and post-judgment interest, as provided by
21     law;

22 j.  Any and all remedies provided pursuant to the Song-Beverly Act,
23     including California Civil Code § 1794;

24 k.  Leave to amend the Complaint to conform to the evidence produced
25     through discovery and at trial;

26 l.  Such other relief as may be appropriate under the circumstances.

1

## **DEMAND FOR JURY TRIAL**

Plaintiffs individually and on behalf of all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Date: May 13, 2021

s/Alex R. Straus
Alex R. Straus, SBN 321366
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormack Street
Los Angeles, CA 91436
T: 917-471-1894
F: 310-496-3176

Lisa A. White*
lisa@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel O. Herrera*
dherrera@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782 4880
Facsimile: 312-782-4485

Bryan L. Clobes*
bclobes@caffertyclobes.com
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe St.
Media, PA 19063
Telephone: (215) 864-2800
Facsimile: (215) 964-2808

Shanon J. Carson*
Glen L. Abramson*
scarson@bm.net
gabramson@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

\* *pro hac vice* applications to follow

*Attorneys for Plaintiffs*